**NATIONAL FOREST PRESERVATION GROUP, a Montana non-profit corporation, and Lester C. Baldwin, Plaintiffs,**

v.

**Earl L. BUTZ, individually and as Secretary of Agriculture, et al., Defendants,**

**Big Sky of Montana, Inc., and Burlington Northern, Inc., Intervening Defendants.**

**No. 2146.**

United States District Court,
D. Montana,
Butte Division.

May 23, 1972.

James H. Goetz, Bozeman, Mont., for plaintiffs.

Roy E. Murray, Jr., Asst. U. S. Atty., Butte, Mont., for the government.

Gerald Fish, Atty., Land and Natural Resources Division, Department of Justice, Washington, D. C., Cale Crowley Billings, Mont., J. David Penwell, Gen. Counsel, Gellatin Gateway, Mont., for Big Sky of Montana, Inc.

Kendrick Smith and Dolphy Pohlman, Jr., Butte, Mont., of Corette, Smith & Dean, Butte, Mont., Richard V. Wicka, Asst. Gen. Counsel, St. Paul, Minn., for Burlington Northern.

## MEMORANDUM, OPINION and ORDER

WILLIAM D. MURRAY, Senior Judge.

Along with their Amended Complaint, plaintiffs filed herein a Motion for a Preliminary Injunction and Temporary Restraining Order to enjoin the Secretary of Agriculture and the other defendants from patenting to Burlington Northern, Inc., lands owned by the United States and which are the subject of Gallatin National Forest—Burlington Northern Inc. Land Exchanges 2 and 3.

Burlington Northern, Inc. and Big Sky of Montana, Inc., separately moved for leave to intervene on behalf of defendants under the provision of Rule 24, F.R.Civ.P. and tendered their separate Answers along with various Motions. There was no objection to the request of Burlington Northern Inc. to intervene, but plaintiffs objected to the request of Big Sky. Upon the showing made, the court in its discretion ordered that both motions for leave to intervene were granted, and the interveners hereafter will be included in any reference to defendants.

All defendants moved to dismiss the action for failure of the amended complaint to state a claim upon which relief can be granted, and upon the further ground that Congress by statute vested in the Secretary of Agriculture the exclusive permissive discretion to make the land exchanges complained of by reason of which the matter is exempt from judicial review under the provisions of 5 U.S.C. Section 701(a) (1) (2). The United States has asked that its memorandum in opposition to the motion for preliminary injunction be considered a motion for summary judgment, which the court does. An additional ground presented by defendants Burlington Northern and Big Sky was that the plaintiffs do not have a sufficient legal interest in the exchange to have any standing to sue. The court received evidence on that issue, ruled that plaintiffs have sufficient standing to sue for the limited purpose of determining from the administrative record whether the Secretary acted in an arbitrary, capricious or illegal manner, or whether or not there is competent, substantial evidence to support his decision.

All defendants likewise requested the court to take judicial notice of the administrative records to be considered along with any and all other evidence received by the court and, under the provisions of Rule 12(b) F.R.C.P. to treat the defense motions to dismiss as motions for summary judgment under Rule 56 F.R.C.P.

Plaintiffs moved for a partial summary judgment on the issues raised in Claim Three of plaintiff's complaint.

Upon agreement of all parties, and without objection, all motions of all parties came on regularly for hearing before the court at Butte, Montana, at 9:30 A.M. on May 18, 1972. At the request of plaintiffs and defendants, and agreed to by all parties, the complete administrative records of the proceedings in boxes marked as Exhibits "A" through "E" inclusive were received in evidence for consideration by the court with respect to all motions. In addition, the court received affidavits and oral evidence presented by plaintiffs on the issue of standing to sue, along with an affidavit of Big Sky opposing the motion for a restraining order.

In Gallatin and Madison Counties, Montana, are located the Beaverhead National Forest and the Gallatin Nation-

al Forest. An area now classified as the Spanish Peaks Primitive Area is located within the Gallatin National Forest. The United States Forest Service has proposed an expansion of the boundaries of that Primitive Area, and that the expanded area be classified as Wilderness. Legislation pending before Congress provides for an expansion of the same area, and that it be classified as a Wilderness Area. To the southwest, southeast and south of those areas, and within the Gallatin National Forest, there is a substantial checkerboard pattern of ownerships. Even-numbered sections are owned by the United States. Numerous odd-numbered sections are owned in fee by Burlington Northern stemming from the Northern Pacific Land Grant Act of 1864 and the Joint Resolution of May 31, 1870. South of the Spanish Peaks Primitive Area, and located as a solid buffer between both that area and the extensions proposed for future classification as a Wilderness Area, are lands presently owned in fee by Big Sky and other persons. Part of the lands proposed to be conveyed by the United States to Burlington Northern in Exchange No. 3 are immediately south of this buffer zone, and the lands proposed to be conveyed by the United States to Burlington Northern in Exchange No. 2 are still further south. Some of the area in which the proposed exchange from the United States is located has already been logged off, and there are numerous public and service or logging roads through it.

The decision of the Secretary of Agriculture of April 20, 1972, reflects the record that Exchanges Nos. 2 and 3 are part of a long-range land exchange program first developed in 1958 by the Forest Service and with the Northern Pacific Railway Co., the predecessor of Burlington Northern. The need for such a program stemmed from the pattern of "checkerboard" land ownerships within National Forest areas.

In Exchange No. 2, the Burlington Northern agreed to convey and has conveyed, to the United States a total

11,859 acres (approximately 18.5 sections). Of that amount 1,950 acres (approximately 3 sections, although physically located in different sections) are located within the exterior of the territorial boundaries of Yellowstone National Park. An additional 1,700 acres of that 11,854 acres in Exchange No. 2 (approximately 2.6 sections) are located within the Spanish Peaks Primitive Area where it borders on the Beaverhead National Forest, and within the boundaries of the expanded area proposed to be classified as Wilderness.

In return, the United States has agreed to patent to Burlington Northern in Exchange No. 2, 5,780 acres (approximately 9.3 sections) none of which is located within nor contiguous to the presently classified Spanish Peaks Primitive Area, nor within nor contiguous to any area proposed to be classified as Wilderness.

In Exchange No. 3, Burlington Northern has agreed to convey, and has conveyed, to the United States a total of 9,620 acres (approximately 15 sections). Of that acreage 1,280 acres (approximately 2 sections) are within the area now classified as Spanish Peaks Primitive Area, and proposed to be in Wilderness. The United States has agreed to convey 4,457 acres (approximately 7 sections) in Exchange No. 3 to Burlington Northern, none of which is located within nor contiguous to any presently classified Primitive or proposed Wilderness area.

In other words, in the course of a long established, comprehensive, managerial policy, the United States agreed to convey to Burlington Northern a total of 10,243 acres (about 16 sections) all of which are within National Forest Boundaries, and none of which are within nor contiguous to either a Primitive area, nor any area proposed to be Wilderness. In return the United States has received more than twice that acreage totaling some 33.5 sections of which 7.6 sections are located either within Yellowstone National Park or within areas now classified as Primitive

or proposed to be Wilderness, and 26 sections are within National Forest boundaries. The administrative record clearly reflects that all of this is the result of a long-standing managerial policy of the Department of Agriculture. The lands were carefully appraised on more than one occasion following the same standard appraisal procedures of the Department customarily followed by the Department in other exchanges nationwide, and there was an administrative determination based on competent, substantial evidence that the United States is receiving lands of equal value. In this connection the Secretary's decision of April 20, 1972, signed by Acting Secretary of Agriculture J. Phil Campbell, Forest Service Docket Nos. 193, et. al., Vol. XI at page 2, footnote 2 points out the statutory authority under which these land exchanges were processed:

> "2] Authority for the land exchanges is contained in the General Exchange Act, as amended (16 U.S.C. 485, 486). The act specifically authorizes either party to an exchange to 'make reservations of timber, minerals, or easements, the values of which shall be duly considered in determining the values of the exchanged lands.' Other authorities applicable to these exchanges are found in the Act of May 26, 1926 (44 Stat. 655, 16 U. S.C. 38); the act of June 11, 1960 (74 Stat. 205; and the act of March 1, 1929 (45 Stat. 1435; 16 U.S.C. 21a–21d)."

Plaintiffs assert non-compliance with the National Environmental Policy Act. Initial studies pertaining to an overall land adjustment plan for this area commenced in 1967 (Secretary's Decision, pp. 2) before the Act became law; the environmental impact study was commenced in 1970. A draft of the statement was submitted to the various Federal and State Agencies involved with environmental problems, as well as to interested private organizations and citizens including members of plaintiffs' N.F.P.G., soliciting advice and recommendations; the draft was sent to the Council on Environmental Quality April 20, 1971, followed by a final statement on July 1, 1971; and the administrative records reflect a thorough study and evaluation including all present claims of plaintiffs. Defendant administrative officials substantially complied with the Act to the fullest extent possible.

With respect to National Forest lands owned or acquired by the United States, the Secretary of Agriculture is vested by statute with the exclusive power "to regulate their occupancy and use" along with the power to make appropriate rules and regulations pertaining thereto (illustrative, but not the only statute is 16 U.S.C. § 551). The Secretary likewise is vested by statute with the exclusive permissive discretion to exchange lands (illustrative but not exclusive is 16 U.S.C. § 485). It is not necessary to delineate here the rights and privileges vested in the private owners in fee. None of the plaintiffs own any legal title or interest in any lands pertinent to the problem. They have a permissive license to use the public lands subject to the superior right of statutory control and exchange vested in the Secretary of Agriculture. They likewise have no more than the right of a licensee or trespasser on the privately owned lands. They now have no perpetual vested right of user in either one. This is of particular interest because plaintiffs now request the court to declare that they have some permanent, vested right of individual, personal preference user superior to the statutory powers vested in the Secretary of Agriculture. No constitutional provision and no statute vests them with any such right. Except for the plaintiff Baldwin, the only evidence with respect to user by any member of plaintiff N.F.P.G. is that he likes to walk, or hike, or hunt or back pack in the area where the 16 sections are to be patented to Burlington Northern. They did not deny or dispute that with the exception of the inability to hunt in the 3 sections within Yellowstone National Park, they have and will have all the same, individual preference, user privi-

leges in the 33.5 sections already conveyed to the United States by Burlington Northern. With the proposed exchange, all members of plaintiff N.F.P. G. will actually have twice the land area than they now have in publicly owned lands to carry on their individual use preferences.

Plaintiff Baldwin testified that he makes his living as a licensed hunting and fishing guide and packer under permits issued by the Forest Service. In 1969 he used an area called Porcupine Creek, a few miles south and east of the proposed land exchange area. Because of public user pressure in that area, pre-dating the proposed development of Big Sky, he gave up that area and has not returned to that area since 1969. In 1970, 1971 and for 1972, he received permits to carry on his trade in Section 24, T4S, R1E, M.P.M. in Cherry Creek, north and west of the Spanish Peaks Primitive Area. His approach to that Cherry Creek area is from Ennis, Montana, in the Madison drainage and on the westerly side of the mountain divide. Between his Cherry Creek location and the proposed land exchanges are the mountain divide, the Spanish Peaks Primitive Area, and the buffer zone of privately owned fee lands, a distance "as the crow flies" of 12 miles, but he could not compute how much further it would be by roundabout useable trails. He does not use the area of the proposed land exchange. It was clear from his testimony that since 1969 nothing transpiring in the proposed land exchange area has had any bearing on his activities.

The evidence reflects that interveners Burlington Northern and Big Sky have sustained and will continue to sustain substantial, irreparable monetary damages by the failure to complete these exchanges.

It is apparent from the record in this case that the Forest Service and the Department of Agriculture have excellent appeals procedures affording fair and expeditious forums for persons such as these plaintiffs to lodge their suggestions, protests and objections and have them fully and fairly considered and evaluated. For almost two years the plaintiffs have presented through the administrative processes their suggestions, as well as all the same objections which they have now presented to this court, some of which were accepted and followed by the government. Each and all of the plaintiffs were given a full, fair and thorough consideration by both the Forest Service and the Secretary of Agriculture.

Furthermore, the record shows that the decision of the Secretary of Agriculture complained of was based upon specialized, administrative expertise in the financial and ecological management of these lands, and in a longstanding, comprehensive managerial policy with respect to these lands—an occupational and user and exchange policy which Congress has by statute vested exclusively in the permissive discretion of the administrative agency. There is no evidence that the decision was arbitrary or capricious or illegal. There is an abundance of competent, substantial evidence to support it. Plaintiffs have failed to present to the court any facts or any law which would authorize this court to vest in these plaintiffs the perpetual individual preference user which they seek and thereby nullify the managerial control and exchange authority exclusively vested in the Secretary of Agriculture by statute.

█ The court finds that the plaintiffs have failed to present or prove the factual conditions precedent required to warrant this court to invoke the drastic remedy of enjoining the Secretary of Agriculture through the medium of either a temporary restraining order, or a preliminary or permanent injunction. In short, plaintiffs first claim in their amended complaint contends that the Secretary has exceeded statutory authority in that the lands given up by the United States exceed in value the lands acquired by the United States. 16 U.S. C. § 485. They contend that generally

there was not an arms-length bargaining posture in the initiation and pursuit of Exchanges Nos. 2 and 3 and that the public was not adequately represented by the defendants in the negotiation of said exchanges. The Secretary is required to follow published statutes and regulations in these types of transactions which are intended to protect the public and insure fair dealing. The court has reviewed the administrative record and the decision of the Secretary on appeal and has determined that with regard to the allegations raised here which were also raised at the administrative level there was substantial compliance with the relevant guidelines and an adequate appraisal and valuation of the lands in the proposed exchange was made.

■ It is incumbent upon the plaintiffs to establish that the action of the Secretary was arbitrary and capricious. This they have not done. Where the parties have failed to put the Secretary on notice of objections at the administrative level, and no prejudice is shown, no review is possible of discretionary administrative action. Ferry v. Udall, 336 F.2d 706, 711 (9 Cir. 1964). Further some end must come to long and drawn out administrative action. The courts in general cannot serve as a vehicle to set aside thorough administrative action even though it may appear to some that errors have been committed. Constant review of administrative action such as this, when the agency was afforded no opportunity to correct its alleged errors can only result in uncertainty in transactions with the government and will be of no benefit to the general public.

■ The plaintiffs' second claim alleges that the Wilderness Act (16 U.S.C. § 1131) requires that before the proposed Exchanges Nos. 2 and 3 can be consummated a study must be done to determine the suitability or nonsuitability of the land to be given up for preservation as wilderness. However, the Wilderness Act requires that a study be made of those lands designated as primitive and this has been done. The plaintiffs further cite Parker v. United States, 448 F.2d 783 (10 Cir. 1971) as holding that where no wilderness study has been concluded contiguous lands must be included in the study and preserved for the possible inclusion in the wilderness area by Presidential prerogative under the Wilderness Act. Here a study has been made of the Spanish Peaks Primitive Area and a recommendation made to the President as to the size of the proposed wilderness area. House Doc. No. 292, Part 15, 90th Cong.2d Sess. (1968). At the time of the study every opportunity was afforded the citizens of the area and other interested parties to express their desires as to those areas which should be included. As a matter of fact the Jack Creek drainage was included in the study as a result of these expressions of public interest. The study has long since been submitted to the President and by him to the Congress where the matter rests. Clearly the *Parker* case has no application.

■ The plaintiffs have based their third and fifth claim on statutory interpretation. They argue that the Secretary has exceeded his statutory authority and failed to follow his own regulations in making Exchange No. 2. Without going into the plaintiff's argument, suffice it to say that the Secretary has authority to make the exchanges under the General Exchange Act, as amended (16 U.S.C. §§ 485, 486), the Act of May 26, 1926 (44 Stat. 655, 16 U.S.C. §§ 37, 38, 39) and the Act of March 1, 1929 (45 Stat. 1435, 16 U.S.C. §§ 21a–21d). Plaintiffs argue that the Secretary has attempted to make certain reservations on land conveyed to Burlington Northern Inc. and that he does not have authority to make such reservations citing 16 U.S.C. § 39. While it is true that this statute does not grant authority to make reservations of mineral rights, such authority has been granted in the General Exchange Act and the United States retains these rights as owner of

the land and therefore has inherent authority to reserve them on exchange. The lands conveyed by the government are all government lands within the national forest and the Secretary may make reservations with regard to those lands no matter where the lands received in exchange are located.

■ Plaintiffs assert that under the Forest Service Manual Section 5431.4 that the Secretary is prohibited from consummating exchange authorities in the same transaction and each must be made as a distinct and separate exchange. While it is true that the Secretary is bound by the Forest Service Manual, it is the opinion of the court that no substantial violation has occurred. It is true that the exchanges of land located in Yellowstone Park require a separate authority. However, the procedure required to protect the public is substantially the same and, except for the separate itemization in advertisements, all the procedures have been satisfied. It is enough that there has been substantial compliance and that the plaintiffs allege no injury as a result of the irregularity.

■ The plaintiffs' fourth claim asserts that defendants generally failed to comply with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq., which requires a detailed environmental impact statement prepared on any major federal action which could significantly affect the environment. The plaintiffs admit that while the statement was not prepared prior to the decision of the Regional Forester to approve the transaction it was prepared prior to the decision of the Chief Forester and prior to that of the Secretary. Further, the record is clear that the time for appeal was extended to allow those interested an opportunity to study the document. But the plaintiffs further assert that the Clean Air Act (42 U.S.C. § 1857, et seq.) requires that the statement include an environmental impact statement from the Administrator of the Environmental Protection Agency

(E.P.A.). The failure of the Secretary to obtain a statement prior to the decision of the Regional Forester and the lack of the statement from the E.P.A. are irregularities in procedure but are not critical to compliance with the statutes. The public has had ample opportunity to review the impact statement and the E.P.A. Administrator was afforded an opportunity to issue a statement. There appears to be no harm as a result of these defects and no objection was made during the administrative procedure to the absence of the E.P.A. statement. Under the doctrine of United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) relief cannot be granted on these grounds.

■ The plaintiffs make further objection to the environmental impact statement on the basis that it is inadequate on several grounds all of which appear to be merely differences of opinion with regard to the importance of various factors. This cannot be a basis of relief in that none of the claims establishes any arbitrary or capricious action in the decision of the Secretary. It is alleged that no environmental impact statement was prepared on the "Forest Land Ownership Adjustment Plan" for the Gallatin National Forest of which the objected exchanges are a part. It does not appear that such a statement would be practical at this time due to the peculiar nature of each individual exchange and the apparent inability to foresee future transactions. However, if a pattern of exchange should develop, that will be time enough to consider whether a study should be required.

■ In their sixth claim the plaintiffs contend that the record is absent a specific finding that the lands to be conveyed by the United States are of nonmineral character. This is required by Section 5433.21 of the Forest Service Manual which, it appears, is intended to insure compliance with the various exchange acts in Title 16 U.S.C. A review of the record reveals no specific deter-

mination that said lands are nonmineral. However, the Regional Forester made his decision on reports on the mineral potential of the area by the U. S. Geological Survey and a field examination by a Forest Service mining engineer and concluded that whenever a field examination confirmed the presence of deposits that may become economically valuable, a reservation to the United States will be made. The court approves of this procedure in that it preserves to the United States valuable mineral deposits and allows for a more flexible program of exchange in any area which may be rich in undeveloped natural resources. It should further be pointed out that no objection of this nature was made on the administrative level and the doctrine of the *Tucker Truck* case cited above is controlling.

The court further finds that the plaintiffs have failed to disclose to the court any factual or legal basis upon which the plaintiffs are entitled to any relief claimed in the amended complaint. It appears that the plaintiffs are dissatisfied with the action taken by the Forest Service and the Secretary of Agriculture. However much the court may agree with this dissatisfaction it is no basis for overturning acts of the Secretary which are committed to his discretion by statute.

Now, therefore, it is ordered and this does order that the motions of plaintiff for a preliminary injunction and temporary restraining order and for a summary judgment are all denied.

It is further ordered that since the court with the consent of all parties has considered all pleadings along with all the evidence presented, including the administrative record and no issues of material fact remain, the motions to dismiss are treated as motions for summary judgment as authorized by Rule 12(b) F.R.C.P. and the motions for summary judgment on behalf of all defendants are hereby granted.