**BIG HOLE RANCHERS ASSOCIATION, INC., a non-profit corporation, Plaintiff,**

**v.**

**UNITED STATES FOREST SERVICE; Ronald C. Prichard, Forest Supervisor, Beaverhead National Forest; and Joe Spehar, District Ranger, Wisdom Ranger District, Defendants.**

**No. CV–86–102–BU–PGH.**

United States District Court, D. Montana, Butte Division.

April 26, 1988.

James H. Goetz, Goetz, Madden & Dunn, P.C., Bozeman, Mont., for plaintiff.

Robert J. Brooks, Asst. U.S. Atty., Gary L. Walton, Poore, Roth & Robinson, Butte, Mont., Lynn A. Johnson, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

Plaintiff, Big Hole Ranchers Association, Inc. ("Big Hole Ranchers"), instituted the

above-entitled action against the United States Forest Service seeking, *inter alia,* to enjoin any road building or logging activities in certain portions of the Beaverhead National Forest. Thereafter, Stoltze Land and Lumber Company, Inc. ("Stoltze") intervened and was joined as a party defendant. This matter is presently before the court on the various defendants' motions for summary judgment. After careful consideration the court is prepared to rule.

## I. BACKGROUND

The plaintiff herein is a non-profit corporation consisting of residents, landowners and ranchers residing in the Big Hole Valley in Beaverhead County, Montana. Plaintiff instituted this action challenging two timber sales (Saginaw Creek and Steel–Fox)[1] and one proposed timber sale (Doolittle), all of which are on National Forest lands within the Beaverhead National Forest. Plaintiff and its individual members assert that if the road-building and logging activities associated with the timber sales are allowed to continue, they will suffer adverse aesthetic, environmental and economic damages.

On July 8, 1986, this court entered an order denying plaintiff's motion for a preliminary injunction enjoining the Forest Service from implementing the three timber sales and Stoltze from building any roads or removing any timber pending a trial on the merits. Plaintiff did not appeal that order, and timbering activities have since proceeded.

## II. HISTORY

In 1978, after public notice and an opportunity for the public to be heard, the government implemented the 1978 Beaverhead National Forest Land Management Plan ("1978 Plan"), which provided long-range management guidance for all resources and lands of the Beaverhead National Forest, including roadless lands. The 1978 Plan was accompanied by a Final Environmental Impact Statement ("FEIS") analyzing the wilderness attributes of the roadless areas therein.

Prior to the adoption of the 1978 Plan and in conjunction with the planning process, the Forest Service initiated a nationwide study, the Roadless Area Review Evaluation ("RARE II"), to evaluate the wilderness potential of roadless areas on National Forest System lands. The three timber sale areas at issue herein were initially included in the 1977 RARE II inventory.

However, in April, 1978, the three timber sale areas were removed from the RARE II inventory pursuant to the 1978 Plan and FEIS. The Forest Service gave the public notice of this action. No challenge or appeal, here in court or administratively, was made regarding the Forest Service's action. The effect of this action allowed the three areas to be managed on a multiple use-sustained yield basis, which includes timber management.

As early as 1983, individual members of the plaintiff organization were aware the Forest Service was contemplating timber sales within the Doolittle, Steel–Fox and Saginaw Creek areas of the Beaverhead National Forest. Public meetings during the planning stage of these sales were held. Individual members of the Big Hole Ranchers attended at least one public meeting regarding both the Steel–Fox and Saginaw Creek sales.

Pursuant to the 1978 Plan and EIS, environmental assessments were prepared for each of the timber sale areas. All three environmental assessments state that they were developed in compliance with the land use designation and management direction of the 1978 Plan.

On May 26, 1983, the Forest Service prepared an Environment Assessment ("EA") for the Steel–Fox timber sale, and made a Finding of No Significant Impact ("FONSI"). No administrative challenge was made at that time. Thereafter, in July,

---

**1.** Intervening defendant Stoltze is the purchaser of the Steel–Fox and Saginaw Creek timber sale contracts.

1983, a contract was let for approximately 16 miles of road construction and related work to provide access to the Steel–Fox timber sale area. That road was completed in August, 1985.

In July, 1985, the Steel–Fox timber sale contract was awarded to Stoltze. No administrative appeal of either the timber sale or the approval of the EA was filed by anyone, including the plaintiff organization and its individual members. The first formal action taken by the plaintiff occurred on or about May 28, 1986, when it requested the Forest Service to stay all further action upon the three timber sale contracts.

Following the opportunity for public comment, environmental assessments were also prepared and approved for the Saginaw Creek and Doolittle timber sales. The Forest Service made a FONSI as to both sale areas. Neither the plaintiff nor any of its individual members made an administrative challenge.

In 1986, a new land resource management plan for the Beaverhead National Forest went into effect, superseding the 1978 Plan. The 1986 Plan and accompanying EIS is currently under administrative appeal by various parties, including the plaintiff organization. The Doolittle sale area was reevaluated in the 1986 Plan and was again allocated to non-wilderness management. However, in light of plaintiff's appeal of the 1986 Plan, the Doolittle sale has been stayed pending resolution of that appeal.

## III. DISCUSSION

### A. *Montana Wilderness Study Act ("MWSA")*

■ Count One of plaintiff's complaint alleges the defendants violated the MWSA, Senate Bill 393, Public Law 95–150, by allowing road construction and timber harvesting to occur in the Doolittle and Steel–Fox sale areas, which are contiguous to the West Pioneer Wilderness Study Area ("Study Area").[2] Plaintiff asserts that since the sale areas constitute roadless areas of wilderness character contiguous to the study area, they may not be developed for non-wilderness purposes without approval of Congress and the President of the United States.

In support, plaintiff cites *Parker v. United States,* 448 F.2d 793 (10th Cir.1971), wherein the court held that the Wilderness Act of 1964, 16 U.S.C. § 1132(b), authorized the President and Congress to add contiguous areas of predominantly wilderness value to existing primitive areas for final wilderness designation. Title 16 U.S.C. § 1132(b) provides:

> Nothing herein contained shall limit the President in proposing as part of his recommendations to Congress the alteration of existing boundaries of primitive areas or recommending the addition of any contiguous area of national forest lands predominantly of wilderness value.

Section 3(c) of the MWSA similarly provides:

> Nothing herein contained shall (1) limit the President in proposing, as part of his recommendation to Congress, the alteration of existing boundaries of any wilderness study area or recommending the addition to any such area of any contiguous area predominantly of wilderness value....

Upon review, however, the court is compelled to conclude *Parker* is inapplicable to the instant action. Prior to the construction of any capital investment roads or the harvesting of timber within the Doolittle or Steel–Fox sale areas, the Forest Service, pursuant to the MWSA, conducted a study of the West Pioneer Study Area and submitted a report to the President for his recommendation to Congress. In light of the fact that the study was completed prior to the occurrence of any non-wilderness activities within the contiguous areas, the *Parker* decision has no application. *See, National Forest Preservation Group v. Butz,* 343 F.Supp. 696, 702 (D.Mont.1972),

---

**2.** The MWSA designated certain lands to be studied by the Secretary of Agriculture as to their suitability for preservation as wilderness.

Included among the areas designated for study was the "West Pioneer Wilderness Study Area."

*reversed on other grounds,* 485 F.2d 408 (9th Cir.1973).

Furthermore, the *Parker* decision only applies to roadless areas contiguous to areas designated as primitive as of September 3, 1964. *See, Wilson v. Block,* 708 F.2d 735 (D.C.Cir.1983); *see also, National Forest Preservation Group v. Butz,* 343 F.Supp. 696 (D.Mont.1972), *rev'd. on other grounds,* 485 F.2d 408 (9th Cir.1973). The areas at issue in the present action have never been contiguous to a Forest Service pre-Wilderness Act primitive area.

Finally, the MWSA did not require areas contiguous to the West Pioneer Study Area to be studied. Section 3(a) of the MWSA provides:

> Except as otherwise provided by this section, and subject to existing private rights, *the wilderness study areas designated by this Act* shall, until Congress determines otherwise be administered by the Secretary of Agriculture so as to maintain their presently existing wilderness character and potential for inclusion in the National Wilderness Preservation System. (Emphasis added).

No mention is made of including contiguous areas. If Congress had intended contiguous areas to be included within the study area and maintained as predominantly wilderness, Congress would have expressly set that forth.

Accordingly, the court concludes defendants' motion for summary judgment be, and the same hereby is, GRANTED with respect to Count One of plaintiff's complaint.

### B. *National Environmental Policy Act ("NEPA")*

■ Count Two of plaintiff's complaint alleges the decision of the Forest Service to proceed with the subject timber sales, coupled with the related construction of capital investment roads, violated NEPA in that such actions constituted major federal actions which significantly affect the quality of human environment and, therefore, an EIS was required pursuant to 42 U.S.C. § 4332(2)(c). Furthermore, Count Three of plaintiff's complaint alleges the challenged

road construction and timber sales are violative of NEPA because they "disqualify these essentially roadless areas from continued roadless management and from potential inclusion into a wilderness area."

In moving for summary judgment, defendants assert EIS's were not required for the subject timber sales. Defendants maintain the Forest Service complied with the procedure required by law in "tiering" the EA prepared for each of the timber sales to the 1978 Plan and EIS. Therefore, defendants assert that, given the Forest Service's expertise and extensive analysis during the environmental analysis process, it was reasonable not to prepare EIS's for the subject sales.

An EIS serves two purposes: (1) to provide decision makers with enough information to aid in the substantive decision whether to proceed with the project in light of its environmental consequence; and (2) to provide the public with information and an opportunity to participate in gathering information. *Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1056 (9th Cir.1985); *State of California v. Block,* 690 F.2d 753, 761 (9th Cir.1982); 40 CFR § 1502.1. Section 102(2)(C) of NEPA requires an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c).

■ In reviewing an agency decision not to prepare an EIS pursuant to NEPA, the court's inquiry is whether the "responsible agency has 'reasonably concluded' that the project will have no significant adverse environmental consequences." *Save the Yaak Comm. v. Block,* 840 F.2d 714, 717 (9th Cir.1988). If substantial questions are raised regarding whether the proposed action may have a significant effect upon the human environment, a decision not to prepare an EIS is unreasonable. *Id.; citing, Foundation for North American Wild Sheep v. United States Department of Agriculture,* 681 F.2d 1172, 1178 (9th Cir. 1982).

■ In the case *sub judice,* the Forest Service, based on the 1978 Plan's allocation

of the three sale areas to timber production, completed an EA for each area.[3] The EA's were prepared to evaluate the site specific environmental effects of the timber sales on each of the subject areas. Thereafter, based upon the EA's, the Forest Service made a FONSI and determined EIS's were unnecessary.

 Granted, the agency involved must be given considerable discretion in defining the need for, and scope of, an EIS. *Vance v. Block*, 635 F.Supp. 163, 165 (D.Mont.1986); *citing, Kleppe v. Sierra Club*, 427 U.S. 390, 412–415, 96 S.Ct. 2718, 2731–2732, 49 L.Ed.2d 576 (1976). However, there are situations in which an agency is required to consider several related actions in a single EIS. *See, Kleppe, supra*, 427 U.S. at 409–410, 96 S.Ct. at 2729–2730. Not to require this would permit dividing a project into multiple "actions," each of which individually has an insignificant environmental impact, but which collectively have a substantial impact. *Thomas v. Peterson*, 753 F.2d 754, 758 (9th Cir. 1985); *citing, Alpine Lakes Protection Society v. Schlapfer*, 518 F.2d 1089, 1090 (9th Cir.1975).

Subsequent to the Supreme Court's decision in *Kleppe, supra*, the Council on Environment Quality ("CEQ") issued regulations defining the circumstances under which multiple related actions must be covered by a single EIS. The regulations are made binding on federal administrative agencies by Executive Order. *Thomas, supra*, 753 F.2d at 758; *citing*, Executive Order No. 11991, 3 C.F.R., 1977 Comp. 123 (1978); *Andrus v. Sierra Club*, 442 U.S. 347, 357–58, 99 S.Ct. 2335, 2340–41, 60 L.Ed.2d 943 (1979). The CEQ regulations define "connected actions" as actions that are "closely related and therefore should be discussed in the same impact statement." 40 C.F.R. § 1508.25(a)(1) (1987). "Connected actions" …:

(i) Automatically trigger other actions which may require environmental impact statements.

(ii) Cannot or will not proceed unless other actions are taken previously or simultaneously.

(iii) Are interdependent parts of a larger action and depend on the larger actions for their justification. *Id.*

The CEQ regulations also require that "cumulative actions" be considered together in a single EIS. *Thomas, supra*, 753 F.2d at 759; *citing*, 40 C.F.R. § 1508.25(a)(2). "Cumulative actions" are those "which when viewed with other proposed acitons have cumulatively significant impacts." 40 C.F.R. § 1508.25(a)(2) (1987). A cumulative impact is defined as:

the impact on the environment which results from the incremental impact of the actions when added to other past, present, and reasonably foreseeable future actions regardless of what agency … or person undertakes such actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

40 C.F.R. § 1508.7 (1987).

Therefore, the issue in the present action is whether the road construction and the three timber sales are "connected actions" and/or "cumulative actions" within the meaning of 40 C.F.R. § 1508.25(a)(2), requiring the Forest Service to prepare an EIS analyzing their combined environmental impacts. In resolving this issue, the court is guided by the recent decisions of the court of appeals for this circuit in *Thomas v. Peterson, supra*, and *Save the Yaak Committee v. Block, supra*.

In *Thomas*, the challenged action was the Forest Service's planning and approving a single lane, gravel road in a former National Forest roadless area located in the State of Idaho. In reversing the district court's grant of summary judgment on behalf of the Forest Service, the court held

---

**3.** An EA serves as a vehicle for the determination of whether an EIS is required, for facilitating the preparation of an EIS if necessary, or for aiding an agency in discharging its NEPA-mandated duties if no EIS is required. *Vance, supra*, 635 F.Supp. at 166; *citing*, 40 CFR § 1508.9; 7 CFR § 3100.20.

that the road project and contemplated timber sales were "inextricably intertwined," were "connected actions," and would, in the court's view, "have cumulatively significant impacts." *Thomas*, 753 F.2d at 759. In reaching that conclusion, the court considered six specific factors.[4] After reviewing those factors, the court ordered the preparation and consideration of an EIS that analyzed the combined impacts of the new road and the timber sales which, in the opinion of the court, the road was "designed to facilitate." *Id.*, at 761.

Shortly after *Thomas* was decided, Don Vance and the Save the Yaak Committee, hereinafter referred to as plaintiffs, renewed their application in this court for a temporary restraining order[5] halting paving operations on a seventeen mile portion of the Yaak River Road established in an effort to expedite logging operations on timber sales in the area.[6] Plaintiffs asserted the decision to pave the entire road was a "proposal for major federal action significantly affecting the quality of the human environment," thereby obligating the Forest Service to prepare a comprehensive EIS. Rather than spending time considering such extraordinary, equitable relief, this court ordered a timely trial on the merits.

Thereafter, on April 15, 1986, this court entered an order denying plaintiff's request for injunctive relief. Furthermore, the court denied plaintiff's motion for summary judgment and granted a similar motion filed by defendants. Having considered the pertinent factors espoused in

*Thomas*, the court concluded plaintiffs had failed to establish a sufficient nexus between the Yaak timber sales and the road project to demonstrate said actions were either "connected actions" requiring consideration in a single EIS nor "cumulative actions" having cumulatively significant impacts. *Vance v. Block*, 635 F.Supp. 163, 167–168 (D.Mont.1986). In reaching that decision, this court noted a comprehensive EIS and travel plan was prepared for the Kootenai National Forest and, furthermore, that future timber sales would be subject to analysis in EA's on an individual basis, and, if necessary, more complete site specific EIS's. *Id.*

On appeal, the appellate court relied upon the same six factors discussed in *Thomas*, but contrary to this court's conclusion, concluded the Yaak timber sales and the paving of the Yaak River Road were "connected actions." *Save the Yaak v. Block*, 840 F.2d 714, 721 (9th Cir.1988). In reversing this court's grant of summary judgment on behalf of the Forest Service, the appellate court held:

> The road reconstruction, timber harvest, and feeder roads are all "connected actions" that must be analyzed by the Forest Service in deciding whether to prepare an EIS or only an EA. Thus, these "connected actions" raise material issues of fact concerning the effects that these actions may have on the human environment. Summary judgment was not appropriate.

---

**4.** These factors were: (1) the Forest Service characterized the road as a logging road, (2) the environmental assessment stated that the reason the road was built was to "access the timber lands to be developed over the next twenty years," (3) the "no action" alternative was rejected because "that alternative would not provide the needed timber access," (4) "the cost-benefit analysis of the road considered the timber to be the benefit of the road," (5) the Forest Service did not claim that other "benefits would justify the road in the absence of the timber sales," (6) a letter was written to the Forest Supervisor from the Regional Forester that stated: "We understand that sales in the immediate future will be dependent on the early completion of portions of the Jersey Jack Road. It would be advisable to divide the road into segments and establish separate completion dates for those portions to be used for those sales." 753 F.2d at 758–59.

**5.** Plaintiffs' initial application for a temporary restraining order was denied, after hearing, on August 5, 1983.

**6.** The Yaak River Road winds through the Yaak and Eureka Range Districts of the Kootenai National Forest, located in Lincoln County, Montana. In the late 1960's, the Forest Service began reconstructing the Yaak River Road in five separate sections. Environmental assessments were prepared for four of the five sections, but no comprehensive EIS was prepared for the reconstruction of the entire road.

*Id.* The appellate court also noted the cumulative impact of the road reconstruction and the ongoing and future timber harvest raised material issues of fact concerning the project's effect upon the human environment, thereby precluding summary judgment. *Id.* at 721.

Upon review, this court is convinced the *Save the Yaak* decision is an extension of the principles previously set forth in *Thomas*. *Thomas* involved construction of a single lane, gravel road in conjunction with proposed logging in the Jersey Jack area, which was an unroaded National Forest area. On the other hand, logging had occurred in the Yaak area, along with the requisite road construction, since at least 1968. Therefore, the Yaak differed from the Jersey Jack situation because, in the former case, the road proposal was neither the first step in, nor a fully necessary prerequisite to, continued timber harvesting in the area. *Vance, supra,* 635 F.Supp. at 167.

Despite the dissimilar factual backgrounds, the court, in *Save the Yaak*, applied the same line of reasoning utilized in *Thomas,* and held the road reconstruction and timber harvest were "connected actions" raising material issues of fact as to their effects on the human environment. In this court's opinion, the present action is indistinguishable from *Save the Yaak* and, therefore, the court concludes material issues of fact exist with respect to plaintiff's claims asserted under the NEPA. Accordingly, the court concludes defendants' motion for summary judgment is appropriately DENIED with respect to Counts Two and Three of plaintiff's complaint.

## C. *National Forest Management Act*

■ 1. Count Four of plaintiff's complaint alleges the subject timber sales were below cost with no offsetting multiple-use public benefits and, therefore, violated the National Forest Management Act of 1976 ("NFMA"), 16 U.S.C. §§ 1600–1614. Defendants assert the plaintiff lack standing to challenge the below cost timber sales.

In order for plaintiff to demonstrate standing, it must allege that the challenged action has caused "injury in fact" and that the interest sought to be protected is "arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *See, United States v. Students Challenging Regulatory Agency Procedures* ("SCRAP"), 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). Furthermore, plaintiff must demonstrate a specific and perceptible harm resulting from the agency's action. *Id.*

In the instant case, the court concludes plaintiff has failed to demonstrate or adequately allege any harm resulting from the decision of the Forest Service to proceed with below cost timber sales.

Notwithstanding plaintiff's lack of standing, defendants are still entitled to summary judgment with respect to Count Four. In *Thomas v. Peterson,* 753 F.2d 754 (9th Cir.1985), the court held the NFMA does not forbid construction of a timber road where its cost exceeds the value of the timber that it accesses. Furthermore, the court is unaware of any statute or regulation which requires the Forest Service to only proceed with a timber sale on a positive cash flow basis.

Accordingly, the court concludes defendants' motions for summary judgment be GRANTED with respect to Count Four of plaintiff's complaint.

2. Count Five of plaintiff's complaint asserts the Beaverhead National Forest was not operating on a non-declining sustained yield basis when planning and implementing the timber sales, in violation of the NFMA and the Multiple–Use Sustained–Yield Act of 1960 ("MUSYA"), 16 U.S.C. §§ 528–531.

■ The interpretation of a statute by the agency charged with its administration is granted substantial deference. *State of Alaska v. Lyng,* 797 F.2d 1479, 1481 (9th Cir.1986), *citing, Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Kidd v. United States Department of Interior, Bureau of Land Management,* 756 F.2d 1410, 1412 (9th Cir.1985). If the statute is silent or ambiguous with

respect to the specific issue, the court may not substitute its own construction for a reasonable interpretation made by the agency. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

To affirm, the court need not conclude that the agency's construction was the only one it could have adopted, or even the one the court would have reached. *Alcaraz v. Block,* 746 F.2d 593, 606 (9th Cir.1984). Deference requires affirmance of any interpretation within the range of reasonable meanings the words permit, comporting with the statute's clear purpose. *Id.*

 In the instant case, MUSYA directs the Forest Service to "develop and administer the renewable surface resources of the national forests for multiple use and sustained yield of the several products and services obtained therefrom." 16 U.S.C. § 529. The Forest Service has wide discretion to weigh and decide the proper uses within any area. *National Wildlife Federation v. United States Forest Service,* 592 F.Supp. 931, 938 (D.Or.1984), *citing, Sierra Club v. Hardin,* 325 F.Supp. 99, 123 (D.Alaska 1971). Furthermore, MUSYA contains "the most general clauses and phrases" and "can hardly be considered concrete limits upon agency discretion. Rather, it is language which 'breathes discretion at every pore.'" *Perkins v. Bergland,* 608 F.2d 803, 806 (9th Cir.1979), quoting *Strickland v. Morton,* 519 F.2d 467, 469 (9th Cir.1975); *National Wildlife Federation v. United States Forest Service,* 592 F.Supp. 931, 938 (D.Or.1984).

Given the broad nature of MUSYA, the court is compelled to conclude plaintiff has failed to adequately allege a cause of action arising thereunder. Accordingly, the court concludes defendants' motions for summary judgment should be GRANTED with respect to Count Five of plaintiff' complaint.

 3. Count Six of plaintiff's complaint alleges that in implementing the timber sales, the defendants have not assured that regeneration of the sale areas will occur within the five year period required by NFMA.

The NFMA requires that timber will be harvested only where "there is assurance that such land can be adequately restocked within five years of harvest." 16 U.S.C. § 1604(g)(3)(E)(ii). Forest Service regulations state:

> When trees are cut to achieve timber production objectives, cuttings shall be made in such a way as to assure that the technology and knowledge exists to adequately restock the lands within 5 years after final harvest. Research and experience shall be the basis for determining whether the harvest and regeneration practices planned can be expected to result in adequate restocking.

36 CFR § 219.27(c)(3).

This court, in its Findings of Fact and Conclusions of Law denying plaintiff's requested preliminary injunction, found the Forest Service did, in fact, consider and assure that reforestation or regeneration would occur within five years on each of the challenged timber sales. The court further found the evidence presented by the plaintiff, through its expert, Peter Sawyer, was not convincing.

Upon review, the court concludes the determination of the Forest Service that adequate restocking could occur on the sale areas was not arbitrary, and was well-reasoned and based on considerable agency expertise and experience. Accordingly, the court concludes defendants' motion for summary judgment should be GRANTED with respect to Count Six of plaintiff's complaint.

IV. CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED that defendants' motion for summary judgment with respect to Counts One, Four, Five and Six of plaintiff's complaint be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion as to Counts Two and Three of plaintiff's complaint is DENIED.