Robert W. PARKER et al., Appellees,

v.

UNITED STATES of America et al., and
Western Wood Products Association,
Intervenor, Appellants.

Nos. 404–70 to 406–70.

United States Court of Appeals,
Tenth Circuit.

Oct. 1, 1971.

See also, D.C., 307 F.Supp. 685.

Jacques B. Gelin, Dept. of Justice, Washington, D. C. (Walter Kiechel, Jr., Acting Asst. Atty. Gen., James L. Treece, U. S. Atty., James R. Richards, Asst. U. S. Atty., S. Billingsley Hill and Nelson H. Grubbe, Washington, D. C., were with him on the brief), for the United States.

Thomas J. Trimble, Phoenix, Ariz. (Donald C. McKinlay, Denver, Colo., was with him on the brief), for Kaibab Industries.

H. Anthony Ruckel, Denver, Colo., and Donald M. Carmichael, Boulder, Colo. (William A. Hillhouse, II, and Tom W. Lamm, Denver, Colo., were with them on the brief), for appellees.

H. Anthony Ruckel, Denver, Colo., for Colorado Open Space Council, and for Robert W. Parker, and others; John W. Young and Richard D. Lamm, Denver, Colo., on brief for Environmental Defenders, Inc. and Howard Gelt, Denver, Colo., on brief for Colorado Environmental Legal Services, Amici Curiae.

James P. Rogers, Portland, Or. (John Tippit, Denver, Colo., was with him on the brief), for appellant-intervenor, Western Wood Products Assn.; and Noble K. Gregory and George A. Sears, San Francisco, Cal., on the brief for Western Lumber Manufacturers, Inc., amici curiae.

Before LEWIS, Chief Judge, and PICKETT and ADAMS *, Circuit Judges.

LEWIS, Chief Judge.

This appeal is taken by the United States, the Secretary of Agriculture, certain named subordinate federal officials, an intervenor, and Kaibab Industries, a lumber company, from a judgment of the District Court for the District of Colorado, 309 F.Supp. 593, enjoining the federal appellants and their contractor, Kaibab, from performing a contract of sale and harvest of designated timber located on public lands in the state of Colorado. The subject lands adjoin but are not contained within the bounds of a designated primitive or wilderness area and thus the case presents issues of first impression requiring interpretation of the Wilderness Act of September 3, 1964, 78 Stat. 890 and particularly section 3(b) of the Act, 16 U.S.C. § 1132(b) which provides:

> The Secretary of Agriculture shall, within ten years after September 3, 1964, review, as to its suitability or nonsuitability for preservation as wilderness, each area in the national forests classified on September 3, 1964 by the Secretary of Agriculture or the Chief of the Forest Service as "primitive" and report his findings to the President. The President shall advise the United States Senate and House of Representatives of his recommendations with respect to the designation as "wilderness" or other reclassification of each area on which review has been completed, together with maps and a definition of boundaries. * * * *Nothing herein contained shall limit the President in proposing, as part of his recommendations to Congress, the alteration of existing boundaries of primitive areas or recommending the addition of any contiguous area of national forest lands*

---

* Of the Third Circuit, sitting by designation.

*predominantly of wilderness value.* Notwithstanding any other provisions of this chapter, the Secretary of Agriculture may complete his review and delete such area as may be necessary, but not to exceed seven thousand acres, from the southern tip of the Gore Range-Eagles Nest Primitive Area, Colorado, if the Secretary determines that such action is in the public interest. (Emphasis added.)

The judgment of the district court has multiple effects:

(1) It determines as a fact that the timber contract pertains to an area, the East Meadow Creek Area of White River National Forest, that is predominantly of wilderness value and contiguous to the Gore Range-Eagles Nest Primitive Area; (2) it enjoins the sale and harvest of timber in the East Meadow Creek Area of White River National Forest until a determination is made by the President and Congress regarding the area's inclusion in a wilderness area to be created from the Gore Range–Eagles Nest Primitive Area and suitable contiguous lands; (3) it requires that the East Meadow Creek Area, because of its wilderness character and contiguousness to the Gore Range-Eagles Nest Primitive Area, be included in the wilderness study report of the Secretary of Agriculture to the President and Congress. The memorandum opinion of the trial court is found at 309 F.Supp. 593. Appellants contend the judgment must fail for lack of jurisdiction, characterizing the injunction as an unauthorized interference with a discretionary management function authorized by Congress and stemming from an unconsented suit against the United States. Kaibab and interested lumber interests add the contention that appellees have failed to exhaust their administrative remedies.

The cases defining and interpreting the extent and limitations on judicial review of administrative decisions are multitudinous but have recently been brought into proper perspective with remarkable clarity by the Supreme Court in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136. We there learn that administrative decisions such as the one here considered are subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701, unless specifically prohibited by the Congress or falling within the "narrow exception" of agency action committed to the wide discretion of the administrative body by law as evidenced by clear congressional intent. Citizens to Preserve Overton Park, *supra* at 410, 91 S.Ct. 814. This "wide" discretion within the agency is never judicially unapproachable when there is "law to apply." *Id.* at 410, 91 S.Ct. 814.

We have no difficulty in recognizing the general purpose of the Wilderness Act. It is simply a congressional acknowledgment of the necessity of preserving one factor of our natural environment from the progressive, destructive and hasty inroads of man, usually commercial in nature, and the enactment of a "proceed slowly" order until it can be determined wherein the balance between proper multiple uses of the wilderness lies and the most desirable and highest use established for the present and future. A concerned Congress, reflecting the wishes of a concerned public, did by statutory definition choose terminology that would seem to indicate its ultimate mandate.

A wilderness, in contrast with those areas where man and his own works dominate the landscape, is hereby recognized as an area where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain. An area of wilderness is further defined to mean in this chapter an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvements or human habitation, which is protected and managed so as to preserve its natural conditions and which (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substan-

tially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined type of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value. 16 U.S.C. § 1131(c)

Having initially established by definition that a wilderness cannot remain a wilderness if man invades and remains, the Act made at least three further provisions pertinent to our case. It designated the Gore Range-Eagles Nest Primitive Area, and other comparable areas, a preserved wilderness subject to some exceptions not here involved. It required the Secretary of Agriculture, through 16 U.S.C. § 1132(b), to review and report as findings to the President, and within a time certain, the suitability or non-suitability of all such areas for preservation as wilderness within the national forests. In turn, the President was directed to advise the Congress of his recommendations on the subject *but,* as earlier emphasized in our citation of this section, the President was not to be bound by the action of the Secretary or findings of the Secretary and could recommend that the designated primitive areas be enlarged by the addition of contiguous areas predominantly of wilderness value.

██ Appellants do not attack the finding of the trial court, as such, that the East Meadow Creek Area is of wilderness value. And, indeed, the finding is supported by the record considered under any standard of appellate review. *See* 309 F.Supp. 593, 601. But of course such finding has no significance unless there is "law to apply," in that 16 U.S.C. § 1132(b) clearly means that the President and Congress shall have a meaningful opportunity to add contiguous areas predominantly of wilderness value to existing primitive areas for final wilderness designation. The lumber industry appellants do attack the trial court's

designation of the contract lands as "contiguous" to the preserved wilderness area by pointing out that the Forest Service, after listening to various protests concerning the original contract contemplated with Kaibab, reduced the number of board feet in the proposed contract and in so doing preserved a bumper area between East Meadow Creek and the Gore Range-Eagles Nest Primitive Area. We are not impressed with this contention. The preservation of a "bumper" area does not probe the basic question presented, merely serves to lessen the impact of the agency action, and does not justify such action if otherwise prohibited. We reject this contention as dispositive of our issue.

Because this case is one of first impression, all appellants very properly set out the legislative history of the Wilderness Act as an argumentative premise that the Act was not intended to constitute a drastic cutback in the discretionary management judgment of the concerned administrative agencies and that the Act was intended to supplement and not supplant the Multiple Use-Sustained Yield Act of June 12, 1960, 16 U.S.C. § 528, et seq. And, indeed, the legislative history of the Act does reflect constant reassurance to lumber, grazing, and other such interests by many informed members of Congress that the legislation does not and cannot adversely affect their legitimate interests. However, these portions of the legislative history would appear to be directed to those provisions of the Act which locked in the statutory designated wilderness areas for a time, in most instances certain, and which were already unavailable for commercial development under existing administrative policy and rulings. Since the Act only accepted as wilderness those areas then designated and did not extend the designation, wilderness remained unaffected by the statute and any concern of commercial interests in that regard was not warranted. We accept the legislative history of the Act as indicating reassurance of current administrative policy regarding existing wil-

derness areas and reassurance to commercial interests that no change was contemplated to their then existing potentials. So, too, we accept the legislative history of the Act as indicating its terms should not be interpreted as a general curtailment of agency discretion in the normal day-by-day administration of the national forests, parks or other public lands. But we find nothing in the Wilderness Act as written or in its legislative history in formulation that would support an ambiguity in word or intent dictating an error in the interpretation of section 1132(b) as made by the trial court.

█ It is, of course, a cardinal rule of statutory construction that effect should be given to every provision of a statute, Salt Lake County v. Utah Copper Co., 10 Cir., 93 F.2d 127, 133. Should we, in the case at bar, concede to federal appellants the discretionary right to destroy the wilderness value of the subject area, one contiguous to a designated wilderness, we would render meaningless the clear intent of Congress expressed in 16 U.S.C. § 1132(b) that both the President and the Congress shall have a meaningful opportunity to add contiguous areas predominantly of wilderness value to existing primitive areas for final wilderness designation. This statutory limitation on agency discretion is, of course, a narrow one dictated by necessity as contained in the definition of wilderness and by the specifics of the statutory words creating the limitation.

The third and final aspect of the trial court's injunction affirmatively requires the federal appellants to include its study of the East Meadow Creek Area in its report to the President and Congress. Justification for this requirement is found in the regulations of the Forest Service itself.

The Forest Service, rather than include its detailed regulations in the Code of Federal Regulations, maintains the Forest Service Manual (FSM). The section of the regulations which is most helpful in the construction of 16 U.S.C. § 1132(b) is FSM § 2321(1):

Each Primitive Area (so classified as of September 3, 1964) *and contiguous lands which seem to have significant wilderness resources* will be studied to determine whether to recommend that all or part should be included in the National Wilderness Preservation System. (Emphasis added.)

Following FSM § 2321(1) are lengthy and detailed directives describing the manner in which studies are to be made, listing the factors to be considered in making recommendations, giving instructions for conducting public hearings, and recognizing that the duty of the Forest Service is to study and recommend and that the President and Congress are to make the final determinations. The regulations contain not just one, but many references to the study of contiguous areas of significant wilderness value. It seems clear from the Forest Service's regulations that its construction of the Wilderness Act is in full accord with the decision of the court below. Indeed, the testimony and exhibits offered at trial show that the Forest Service has scrupulously adhered to the regulations and the statutory scheme in other wilderness reviews and recommendations. A review of the exhibits offered at trial shows numerous recommendations for addition of contiguous areas to the primitive areas for final wilderness classification.

█ The trial court, having determined as a fact that the East Meadow Creek Area had predominantly wilderness value which should be preserved for consideration at the executive and congressional level, was completely justified in directing inclusion of a study of the area in the mandated report to the President. This requirement in no way directs or limits the Secretary in his full discretionary right to make such recommendation to the President as he may deem proper.

█ We conclude, as did the trial court, that 16 U.S.C. § 1132(b) sets out "law to apply" under the facts of the

case at bar and hold that consequently this action and the judgment neither constitute an unauthorized suit against the United States nor an unjustified judicial interference with the management powers of federal appellants.

As earlier indicated, the lumber industry appellants (but not federal appellants) assert that appellate review in the case should be rejected because appellees failed to exhaust administrative remedies before instituting the action. The decision to contract with Kaibab to harvest the East Meadow Creek Area was made by the Regional Forester. Applicable regulations provide for an administrative appeal from such decisions to the Chief of the Forest Service. From the decision of the Chief an appeal is available to the Secretary of Agriculture. 36 C.F.R. 211.20 et seq. It is undisputed that the plaintiffs did not pursue their right of appeal through the prescribed administrative process.

■■ The issue of exhaustion of administrative remedies is raised for the first time on appeal and should therefore be given no consideration by this court, Stephens Industries, Inc. v. Haskins & Sells, 10 Cir., 438 F.2d 357, unless favorable consideration of the issue defeats jurisdiction. Seidenbach's v. Bland Terry Shoe Corp., 10 Cir., 292 F.2d 206, cert. denied, 368 U.S. 933, 82 S.Ct. 365, 7 L.Ed.2d 194. We can conceive of no legal nor logical reason why the doctrine of exhaustion of administrative remedies should be applied in this case at this late date. The reasons are many and manifest: There is no legislative mandate requiring such exhaustion; the dispositive issue is one of pure law requiring no application of administrative expertise, *see* Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772; Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; the desirability of saving judicial time through insistence on administrative exhaustion is no longer applicable and would now amount to a mockery; the record clearly reflects that the administrative decision

was informally considered through all levels of the appropriate agencies; the doctrine is applied for the benefit of orderly procedure in the administrative and judicial process and not for the benefit of third parties.

*The judgment is affirmed.*