**WYOMING WILDLIFE FEDERATION, a Wyoming Non-profit Corporation, and National Wildlife Federation, a District of Columbia Non-profit Corporation, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, via Craig Rupp, Regional Forester, United States Forest Service, in his official capacity, Defendants-Appellants,**

City of Cheyenne Board of Public Utilities, an agency of the City of Cheyenne, Defendant.

No. 84–2231.

United States Court of Appeals, Tenth Circuit.

June 3, 1986.

Mark R. Haag, Washington, D.C. (Patricia A. McCoy, Washington, D.C., and Thomas D. Lustig, National Wildlife Foundation, Boulder, Colo., were on briefs), for plaintiffs-appellees.

John A. Bryson, Atty., Dept. of Justice, Washington, D.C., (F. Henry Habicht II, Asst. Atty. Gen., and Jacques B. Gelin, Atty., Dept. of Justice, Washington, D.C., were also on brief), for defendants-appellants.

Before HOLLOWAY, Chief Judge, TIMBERS, Senior Circuit Judge,* and BALDOCK, Circuit Judge.

HOLLOWAY, Chief Judge.

This is an appeal from an order of the United States District Court for the District of Wyoming awarding attorneys' fees to plaintiffs, the Wyoming Wildlife Federation and the National Wildlife Federation, under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. We affirm.

## I.

### The Factual Background

The litigation underlying the award of attorneys' fees that is the subject of this appeal arose when the National Forest Service, by and through defendant Craig Rupp, the Regional Forester, granted an easement to defendant City of Cheyenne Board of Public Utilities (CBPU), to use land in the Medicine Bow National Forest

---

* Honorable William H. Timbers, Senior Circuit Judge, Second Circuit, sitting by designation.

for construction of Stage II of the Cheyenne Water Diversion Project. This is the same project which gave rise to the case of *Lidstone v. Block,* 773 F.2d 1135 (10th Cir. 1985), recently decided by this Court.

Plaintiffs filed suit against the United States in the United States District Court for the District of Colorado, alleging violations of the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701, *et seq.,* Executive Order 11990, and the doctrine of *Parker v. United States,* 448 F.2d 793 (10th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). The case was transferred to the United States District Court for the District of Wyoming, so that CBPU could be joined as a party defendant. CBPU was so joined. The parties reached a settlement, and filed a joint motion for judgment in accordance with their settlement agreement with the court on May 31, 1983. The district court's order granting the motion was filed on June 27, 1983.

On July 25, 1983, the plaintiffs filed an application for costs and attorneys' fees under the EAJA. After a hearing, the court granted the motion, finding that the plaintiffs were "prevailing parties" within the meaning of the EAJA and that the litigation position of the United States was not substantially justified. The district court then entered an order that the United States pay plaintiffs' attorneys' fees and costs, in the amount of $9,121.01. The Government appeals this order.

There are two issues on appeal: First, were the plaintiffs prevailing parties within the meaning of the EAJA; and second, was the litigating position of the Government substantially justified? Both of these issues were determined adversely to appellants by the district court. The Government does not challenge the amount of the award.

## II.

### Were the Plaintiffs "Prevailing Parties" Within the Meaning of the Equal Access to Justice Act?

Even when plaintiffs settle a case with the Government, they may still be prevail-ing parties within the meaning of the EAJA. *Cardwell v. Kurtz,* 765 F.2d 776, 781 (9th Cir.1985); *Environmental Defense Fund, Inc. v. Watt,* 554 F.Supp. 36, 39 (E.D.N.Y.1982), *aff'd,* 722 F.2d 1081 (2d Cir.1983); *see also Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). The question is whether the plaintiffs, through the settlement, achieve "some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). The courts make this determination by comparing the plaintiffs' complaint with the settlement agreement. *Environmental Defense Fund v. Watt,* 554 F.Supp. at 40.

After comparing the settlement agreement and the complaint here, the district court, in its fact-finding capacity, determined that the plaintiffs "achieved [their] objectives in a significant way," and were thus prevailing parties. This finding is subject to review under the clearly erroneous standard. Fed.R.Civ.P. 52; *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1486 (10th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). Our review of the record convinces us that the district court's finding must be affirmed.

■ The Government argues that the CPBU, not the Forest Service, made the concessions in the settlement agreement which resulted in plaintiffs achieving their objectives. A simple comparison of the complaint and the settlement agreement clearly demonstrates that the Forest Service made important concessions to the plaintiffs. Plaintiffs' complaint asserted four causes of action against the defendants. First, plaintiffs claimed that the Forest Service had not complied with a provision of the FLPMA, which required a determination that the easement granted to the CBPU "does no unnecessary damage to the environment." 43 U.S.C. § 1764(a)(4). In

the settlement agreement, the Forest Service agreed to enforce all mitigation measures to which the CBPU had agreed when the easement was granted, to follow FLPMA procedures in modifying the mitigation requirements, and to notify the plaintiffs of any proposed change in the mitigation requirements. The Government claims that because it was already obligated by law to do these things, the plaintiffs cannot be considered to have prevailed on this point. What the Government's argument overlooks, however, is that there was obviously concern by the plaintiffs that the Government would not enforce the mitigation measures. Through the settlement agreement, the plaintiffs obtained an assurance that the Government would enforce the mitigation measures. Moreover, because the settlement agreement became part of the judgment, the plaintiffs could apply immediately to the court to enforce a judgment already entered, should the Government fail to enforce the mitigation requirements.

■ Second, the plaintiffs argue that the easement would violate Executive Order 11990, by failing adequately to protect and preserve wetlands. The easement granted by the Forest Service required the CBPU to mitigate wetlands damage to the extent required by the Corps of Engineers. The agreement between the Corps and the CBPU was somewhat ambiguous. In the settlement agreement, however, all ambiguity was removed. The CBPU promised to replace wetland values reflected in the alleged loss of approximately 242 acres of wetland, and the Forest Service agreed to enforce that requirement. The Government argues, with some force, that the concession on this issue was made by the CBPU, not the Forest Service. However, by becoming a party to the settlement agreement, the Forest Service became bound to enforce the 242 acre mitigation requirement as articulated in the settlement agreement. The Government thus conceded its power to enforce the wetlands mitigation requirement according to its own construction thereof. It could hardly be clearly erroneous to find that, because

of this concession by the Government, the plaintiffs achieved some of the benefit they sought.

■ Third, plaintiffs sought to prevent the construction of roads in the easement area under the FLPMA and the doctrine of *Parker v. United States,* 448 F.2d 793 (10th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972). Under the settlement agreement, the Forest Service agreed to close all newly constructed roads to public vehicular traffic. The Government argues that it conceded nothing in agreeing to close the roads to public traffic; that it merely "accelerated" a decision that it would have made later. It is far from clear that the Forest Service's decision would have been to close the roads, however. The Forest Service could have decided to open the roads to public traffic. Thus, although the plaintiffs failed to prevent the construction of roads, they did succeed in closing those roads to public traffic. The court's finding that the plaintiffs achieved their objective in a significant way is not clearly erroneous.

■ Finally, plaintiffs sought protection of minimum stream flows through the easement area. In the settlement agreement, the Government promises to enforce all mitigation measures, including minimum stream flows. Significantly, while the Forest Service reserves the right to change other mitigation requirements after complying with applicable law, it agrees not to alter the minimum stream flow requirements, except in one limited area, for thirty years. This concession by the Government protected the minimum stream flows for at least a thirty-year period. It was not clear error for the district court to find that plaintiffs significantly achieved their goal of maintaining minimum stream flows.

We hold that there was no clear error in the district court's determination that the plaintiffs were prevailing parties under the EAJA. The court's findings are amply supported by a comparison of the complaint and the settlement agreement. And this

court "may not reverse [the district court] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.... Where there are two permissible views of the evidence, the factfinder's choice between them can not be clearly erroneous.... This is so even when the district court's findings do not rest on credibility determinations, but are based on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer*, —— U.S. ——, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

## III.

### Was the Government's Litigation Position "Substantially Justified?"

Once it has been established that plaintiffs are prevailing parties, the burden shifts to the Government to prove that it was substantially justified in asserting its litigating position.[1] *Cinciarelli v. Reagan*, 729 F.2d 801, 804 (D.C.Cir.1984). "[T]he test of substantial justification is essentially one of reasonableness in both law and fact." *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481 (10th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984) (footnote omitted). The question of reasonableness here is essentially factual, and our review of the district court's finding on this issue is again under the clearly erroneous standard. *See Boned Beef, supra*, at 1486.

The district court found that the Government's position "may not have been substantially justified," because "the defendants threatened noncompliance with the mandates of FLPMA, of Executive Order #11990, and of the ruling in *Parker v. United States*, ... required plaintiffs to

seek mitigation of the alleged harm to the environment...."[2] In other words, the court found that defendants' threatened noncompliance with law required plaintiffs to take action as private attorneys general.

■ The issue of wetlands mitigation best illustrates the unreasonableness of the Government's litigating position. Executive Order 11990 requires the Forest Service "to minimize the destruction, loss or degradation of wetlands." *Id.* § 1(a). The Forest Service argues that this duty was carried out by the Corps of Engineers, but a casual examination of the agreement between the Corps and the CBPU reveals that there was no minimum required acreage of wetlands mitigation. Though it might have been reasonable to rely on the Corps' agreement with the CBPU had the agreement contained a minimum standard for wetlands mitigation, it was clearly unreasonable for the Forest Service to rely on an agreement that provided no minimum standard to meet its duty to minimize destruction, loss or degradation of wetlands. The Government argues that it was the CBPU that made the concession on this issue, so the Government's position should be regarded as justified. This argument ignores the fact that the Forest Service had an affirmative duty to protect the wetlands that it only recognized when it committed to enforce the mitigation measures in the settlement agreement. It was not clear error for the district court to hold that the Government's position on this issue was not substantially justified.

■ With respect to alleged violations of FLPMA, the Government took the position that minimum stream flow requirements were not required so that the easement would "do no unnecessary damage to the

---

1. We need not re-examine the question of which Government position, litigation or pre-litigation, must be substantially justified, *see United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1487 (10th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984), because in this case the positions are identical. Moreover, the statute has been amended so that both the Government's litigation position in the civil action, and the prior action or failure to act by the

agency on which the civil action was based, are considered. 28 U.S.C. § 2412(d)(2)(D).

2. Despite the use of the word "may," we feel it is clear from the fact that the district court awarded attorneys' fees under the EAJA that it made a finding that the Government's position was not substantially justified.

environment." The stream flow requirements were clearly mandated by the Forest Service's own environmental impact statement, which states that the easement's stream flow levels are the minimum necessary to mitigate damage to wildlife habitat. It was not clear error for the district court to find that the Government's litigation position on this issue was not substantially justified when its position was in conflict with its own environmental impact statement.

 The easement's provisions for access roads were challenged both under FLPMA's requirement of mitigation of unnecessary harm to the environment and the *Parker* doctrine. The Government's position was that *Parker* was inapplicable, which seems justified in light of this court's holding in *Lidstone v. Block*, 773 F.2d 1135 (10th Cir.1985). The Government's position that immediate closure of the roads was not necessary to meet the FLPMA's requirements is another matter. The Government's position was that the decision whether or not to close the roads to the public could be postponed for two years. Had the settlement agreement not bound the Government to close the roads, the Government could have decided to open them to the public. The Government's position, then, seen in its starkest form, was that FLPMA did not require that the roads be closed to the public. The district court found that the Government's position—that road closures were not required in order to do no unnecessary harm to the environment—was not substantially justified. We find no clear error here.

## IV.

### Conclusion

For plaintiffs to recover costs and attorneys' fees under the EAJA, the trial court must find that plaintiffs were prevailing parties and that the Government's position was not substantially justified. There being no clear error in the district court's findings on these issues, the judgment is AFFIRMED.

The plaintiffs-appellees have requested attorneys' fees and costs on appeal. Brief for Plaintiffs-Appellees 35. We conclude that these items should be awarded. *See Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1580 (Fed.Cir.1986); *Miller v. United States*, 753 F.2d 270, 275 (3d Cir.1985). The cause is accordingly REMANDED to the district court for hearing and determination as to the proper award of attorneys' fees on appeal. The Clerk of this court is directed to include in the mandate the amount of allowable appellate costs, which shall be included in the district court's order determining appellate attorneys' fees to be awarded to the plaintiffs-appellees.

IT IS SO ORDERED.