**VOYAGEURS REGION NATIONAL PARK ASSOCIATION; the National Parks and Conservation Association; the Wilderness Society; Sierra Club; the Humane Society of the United States; the Friends of the Boundary Waters Wilderness; Friends of Animals and their Environment, Appellants,**

v.

**Manual LUJAN, Jr., Secretary, Department of the Interior; James M. Ridenour, Director, National Park Service, Appellees.**

**Citizens Council on Voyageurs National Park, Koochiching County, St. Louis County, City of International Falls, City of Island View and City of Ranier;**

**Minnesota United Snowmobilers Association, Amici Curiae.**

No. 91–2023.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1991.

Decided June 10, 1992.

Richard Duncan, Minneapolis, Minn., argued (Brian O'Neill and Michael Ponto, on brief), for appellants.

Dirk D. Snel, Dept. of Justice, Washington, D.C., argued (Barry Kenneth Saffold, Asst. U.S. Atty., St. Paul, Minn., and Robert Klarquist, Dept. of Justice, Washington, D.C., on brief), for appellees.

Before JOHN R. GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Voyageurs Region National Park Association and a group of six other organizations[1] appeal from the district court's refusal to enjoin snowmobile use on the Kabetogama Peninsula within Voyageurs National Park in Minnesota, pending study of the area for wilderness designation pursuant to the Wilderness Act, 16 U.S.C. §§ 1131–1136 (1988). Voyageurs argues that the Park Service's decision to permit snowmobiling within a wilderness study area violates the Wilderness Act and is arbitrary and capricious. We affirm the district court.[2]

Congress authorized the establishment of Voyageurs National Park on January 8, 1971. 16 U.S.C. § 160 (1988). The Voyageurs National Park Act required the Secretary of Interior to study and recommend park lands for designation and protection as wilderness areas. 16 U.S.C. § 160f(b).[3] The Wilderness Act also required the Secretary of Interior to review all park roadless areas of 5,000 acres or more for potential wilderness designation. 16 U.S.C. § 1132(c). Despite the congressional mandate, the Secretary never submitted a wilderness recommendation to the President for the Voyageurs National Park.

Once Congress has designated land as a wilderness area, its use is restricted. Permanent roads, and, except in certain situations, "temporary road[s], ... motor vehicles, motorized equipment ... [and any] other form of mechanical transport" are prohibited in wilderness areas. 16 U.S.C. § 1133(c).[4] Federal regulations governing national parks, with limited exceptions, specifically prohibit snowmobile use.[5]

The question here is whether an area under study for wilderness designation is subject to the use restrictions outlined above. Guidance on this question can be gleaned from 43 C.F.R. § 19.6 (1991), which states that the "administration and use" of potential wilderness areas:

shall be developed with a view to protecting such areas and preserving their wilderness character ... in such manner as will leave them unimpaired for future use and enjoyment as wilderness, with inconsistent uses held to a minimum.

Park Service Management Policies also state that potential wilderness areas will be

---

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The National Parks and Conservation Association, The Wilderness Society, Sierra Club, The Humane Society of the United States, The Friends of The Boundary Waters Wilderness, and Friends of Animals and Their Environment.

2. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

3. 16 U.S.C. § 160f(b) provides:
   Within four years from the date of establishment, the Secretary of the Interior shall review the area within the Voyageurs National Park and shall report to the President, in accordance with subsections (c) and (d) of section 1132 of this title [the Wilderness Act], his recommendation as to the suitability or nonsuitability of any area within the lakeshore for preservation as wilderness....

4. 16 U.S.C. § 1133(c) provides:
   Except as specifically provided for in this chapter, ... there shall be no commercial enterprise and no permanent road within any wilderness area ... [and] there shall be no temporary road, no use of motor vehicles, motorized equipment or motorboats, no landing of aircraft, no other form of mechanical transport, and no structure or installation within any such area.

5. 36 C.F.R. § 2.18(c) (1991) provides:
   The use of snowmobiles is prohibited, except on designated routes and water surfaces that are used by motor vehicles or motorboats during other seasons. Routes and water surfaces designated for snowmobile use shall be promulgated as special regulations. Snowmobiles are prohibited except where designated and only when their use is consistent with the park's natural, cultural, scenic and aesthetic values, safety considerations, park management objectives, and will not disturb wildlife or damage park resources.

managed as wilderness, and the Service "will seek to eliminate the temporary conditions that preclude wilderness designation." *Management Policies: Part One: Management of the National Park Systems* 6:3 (Dec. 1988). The policies also state that:

> The Park Service will take no action that would diminish the wilderness suitability of an area recommended for wilderness study or for wilderness designation until the legislative process has been completed. Until that process has been completed, management decisions pertaining to recommended wilderness and wilderness study areas will be made in expectation of eventual wilderness designation.

*Id.*

In November 1988, the Park Service issued a Draft Trail Plan and Environmental Assessment for the park. This plan considered establishing a 29.4 mile system of parallel snowmobile trails across the Kabetogama Peninsula. In April 1989, the Park Service announced the adoption of the proposed snowmobile trail plan, and Voyageurs filed this action seeking an order requiring the Park Service to complete a wilderness study, and enjoining the Park Service from allowing snowmobiling and establishing temporary and permanent snowmobile trails on the Kabetogama Peninsula until the Park Service completed the statutorily required process of wilderness designation.

After Voyageurs brought this action, the Director of the National Park Service issued a memorandum to the Service's Midwest Regional Director entitled "Waiver of Policy for Voyageurs National Park Trail Plan." The memorandum recognized that implementation of the trail plan would require a waiver of both the snowmobile and wilderness provisions of the National Park Service's Management Policies. The Service concluded that waiver of these policies was appropriate. The Secretary relied on the Voyageurs Park enabling legislation which authorized the Secretary to permit snowmobiling in the park. Specifically, 16 U.S.C. § 160h provides: "The Secretary may, when planning for development of the park, include appropriate provisions for (1) winter sports, including the use of snowmobiles...."

The Secretary concluded that the Wilderness Act did not require that wilderness study areas be treated as wilderness; rather the Act required only that "[f]ederal agencies not take any actions in such areas that would preclude their future designation as wilderness." Because the trail surface would not be artificially hardened and would require only minimal clearing and signing, the Secretary concluded that the proposed trail "would not constitute such a diminishment of the area as to preclude future designation as wilderness if snowmobile use were discontinued...." The Secretary also observed that snowmobiling had occurred before the park became a national park, that "[n]o evidence of harm to wildlife ha[d] been put forward," and that the use of snowmobiles contained in a limited corridor is more desirable than the "unregulated and widely dispersed use that is currently occurring." On January 30, 1991, the Park Service issued a regulation, 36 C.F.R. § 7.33(b) 1991, authorizing snowmobiling on certain lakes [6] and trails (including the Kabetogama Peninsula) within the park.

Both parties filed motions for summary judgment. The district court first concluded that the seven plaintiff organizations had standing, *Voyageurs Regional National Park Association v. Lujan*, No. 4–90–434, slip op. at 10–15 (D.Minn. Apr. 15, 1991), that their claims were ripe for judicial review, *id.* at 15–16, and were reviewable agency actions. *Id.* at 16–22. The district court then ordered the Secretary of the Interior to make his wilderness recommendation to the President,[7] *id.* at 28–29, but refused to enjoin snowmobile use in any part of the park. *Id.* at 29–34. The court concluded that the January 30, 1991,

---

**6.** No objection is raised concerning the use of snowmobiles on frozen lake surfaces.

**7.** The Secretary did not appeal these first four rulings. Nevertheless, the Minnesota United Snowmobilers Association and several cities and counties filed an amici curiae brief arguing that the appellants lack standing and that appellants' claims are nonjusticiable political questions. We reject these arguments.

Park Service regulation did not violate the Wilderness Act, and that the Park Service decision to allow snowmobiling on the Kabetogama Peninsula was not arbitrary or capricious. *Id.* at 32. In making these rulings, the district court relied in large part on the Voyageurs National Park enabling legislation which, as we have observed above, specifically provides for snowmobiling in the park. *Id.* This appeal followed.

This court will set aside an agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988); *Gettler v. Lyng,* 857 F.2d 1195, 1198 (8th Cir.1988). An agency regulation "will be upheld if it is 'reasonably related to the purposes of the enabling legislation.'" *Arkansas v. Block,* 825 F.2d 1254, 1256 (8th Cir.1987) (quoting *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). "We must defer to any reasonable interpretation given the statute by the agency charged with its administration." *Arkansas Poultry Fed'n v. United States Envt'l. Protection Agency,* 852 F.2d 324, 325 (8th Cir.1988).

## I.

■ Voyageurs argues that the district court erred in refusing to enjoin snowmobile use on the Kabetogama Peninsula. It contends that the Wilderness Act, federal regulations governing national parks, as well as the National Park Service's management policies, require that wilderness study areas be managed as wilderness pending a review and ultimate decision on designation by Congress, and therefore, to permit snowmobiles within this area is contrary to law.

In addition, Voyageurs relies on a number of statements made by members of Congress to support its position that Congress intended wilderness study areas to be managed as wilderness pending a final decision on their admission into the National Wilderness Preservation System. Voyageurs also relies on *Parker v. United States,* 448 F.2d 793 (10th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1252, 31

L.Ed.2d 455 (1972), as precedent for eliminating any agency discretion that would destroy the wilderness value of a wilderness study area. In *Parker,* the Tenth Circuit upheld an injunction prohibiting the Forest Service from performing a contract to harvest timber in a wilderness study area. *Id.* at 793, 798. The court reasoned that to do otherwise "would render meaningless the clear intent of Congress ... that both the President and the Congress shall have a meaningful opportunity to add ... areas predominantly of wilderness value" to the National Wilderness Preservation System. *Id.* at 797.

The circumstances here differ from those in *Parker.* First, *Parker* considered no statutory counterpart to that contained in 16 U.S.C. § 160h. The Voyageurs Park enabling legislation demonstrates that Congress contemplated and authorized the use of snowmobiles in the park. Section 160h also clouds any significance we might place on the various statements made by members of Congress. *See In re Erickson Partnership,* 856 F.2d 1068, 1070 (8th Cir. 1988) (when statutory language is clear, it is unnecessary to turn to legislative history). Second, here, the Park Service concluded that snowmobiling would not permanently change the area, and thus, would not preclude the area from future designation as wilderness. No such finding was made in *Parker.*

We are persuaded that the circumstances here are more akin to those in *Minnesota Public Interest Research Group v. Butz,* 541 F.2d 1292 (8th Cir.1976) (en banc), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). In that case, we construed former subsection (d)(5) of section 4 of the Wilderness Act. This subsection directed the Secretary of Agriculture to manage the Boundary Waters Canoe Area "in accordance with the general purpose of maintaining ... the primitive character of the area" but "without unnecessary restrictions on other uses, including that of timber." *Id.* at 1297. We concluded that this provision allowed for timber logging in a primitive area observing that "some commercial logging ... was contemplated by Congress." *Id.* Likewise, here, it is appar-

ent that Congress contemplated snowmobile use within the park. *See* 16 U.S.C. § 160h. Voyageurs bases its argument on the more general provisions of the Wilderness Act, adopted in 1964, but the Voyageurs Park enabling legislation, adopted in 1971, specifically refers to the use of snowmobiles in the park. 16 U.S.C. § 160h. Congress was certainly aware of the Wilderness Act when it enacted the Voyageurs National Park Act, and the general language of the Wilderness Act must give way to the more specific provisions of the park's enabling legislation. *See Markair, Inc. v. Civil Aeronautics Bd.*, 744 F.2d 1383, 1385 (9th Cir.1984). The Park Service balanced section 160h with other provisions of the Wilderness Act, and we cannot conclude its course of action was unlawful.

## II.

█ Voyageurs also contends that the Park Service's waiver of preexisting policies prohibiting snowmobiling in potential wilderness areas violated its own policies, and therefore, is not in accordance with law and is arbitrary and capricious. Voyageurs argues that the Park Service's action violates its own management policies in two ways. First, Voyageurs says that because snowmobiling on the Peninsula would be illegal if the Peninsula were designated as a wilderness area, the Park Service's current policy is not a "management decision[ ] ... in expectation of eventual wilderness designation." Second, it contends that snowmobile use "diminish[es] the wilderness suitability of an area recommended for wilderness study ... [before] the legislative process has been completed." Voyageurs specifically points out that the use of snowmobiles will adversely impact bald eagle reproduction, wolf populations and vegetation.

An agency must indeed follow its own regulations while they remain in force. *See Service v. Dulles*, 354 U.S. 363, 379, 77 S.Ct. 1152, 1160, 1 L.Ed.2d 1403 (1957). An agency may amend its regulations, however, if it provides explanations when its rulemaking reflects significant policy

changes. *Sierra Club v. Clark*, 755 F.2d 608, 619 (8th Cir.1985).

We are satisfied the agency's action is not arbitrary and capricious. While there are troublesome aspects to the Park Service's decision, we cannot say that it rises to the level of being arbitrary and capricious. The Service provided adequate explanation for its departure from its management policies by finding that because the trails will not be artificially hardened and will be subject to only minimal clearing and signing, the area would not be diminished for future wilderness designation. We also observe that the final regulations provide for closure of given areas to snowmobile use "taking into consideration ... wildlife management." 36 C.F.R. § 7.33(b)(3). The use of park lands involves many conflicting interests and, at heart, requires policy decisions which, in the last analysis, are made by Congress.[8] In light of Congress's express authorization of snowmobile use within the park, we cannot conclude the agency's action is arbitrary or capricious.

We affirm the judgment of the district court.

---

8. The wilderness designation process is still in process. On May 29, 1992, the Environmental Protection Agency filed its final Environmental Impact Statement for the wilderness recommendation proposed by the Park Service. *See* 57 Fed.Reg. 22747 (1992).