**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard CRUZ, Defendant–Appellant.**

**No. 94–6271.**

United States Court of Appeals,
Tenth Circuit.

June 20, 1995.

Jay F. McCown, Oklahoma City, OK, for defendant-appellant.

Edward J. Kumiega (Rozia McKinney–Foster, U.S. Atty., with him on the brief), Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, MOORE, Circuit Judge, and BROWN, Senior District Judge.*

JOHN P. MOORE, Circuit Judge.

This appeal presents only one question: did the district court find facts at the time of sentencing sufficient to support a sentence of 60 months? The crime of conviction was conspiracy to introduce a prohibited object into a federal prison. Because of the confluence of statutory and sentencing guidelines criteria, to sentence the defendant to 60 months under the facts of this case, it was necessary for the district court to conclude the defendant believed the prohibited object was heroin. Although the district court carefully viewed the evidence and developed three distinct rationales for its holding, our reflective examination of the record leads us to believe there is a gap in the court's findings that deprives its conclusion of support. We therefore remand for resentencing.

At the time the underlying events took place, defendant Richard Cruz had been employed by the Bureau of Prisons for fourteen years, serving the last seven years as a correctional counselor. Fernando Orozco Londono was an inmate at the Federal Correctional Institution at El Reno, Oklahoma, serving a 324–month sentence for drug crimes. Mr. Cruz was Mr. Orozco's counselor at El Reno.

Mr. Cruz was arrested and charged as the result of an FBI sting operation. The sting was organized by FBI agent Herman Nichols, the investigator in the government

* The Honorable Wesley E. Brown, Senior District Judge for the United States District Court for the District of Kansas, sitting by designation.

crimes unit assigned to El Reno. Agent Nichols was informed by an El Reno inmate that Mr. Orozco was willing to bring heroin into the prison via his outside contact, Maria Martinez, and Mr. Cruz. That informant assisted in the sting by placing an "order" for two ounces of heroin with Mr. Orozco, asking him to receive drugs and cash that were to be provided by one of the informant's associates outside prison. The FBI arranged for an undercover agent, Jose Contreras, to pose as the informant's associate and provide $1,500 cash and two ounces of simulated heroin to Ms. Martinez. Mr. Orozco spoke with Ms. Martinez on the phone several times, instructing her how to receive and deliver the drugs.

Meanwhile, as counselor and inmate, Mr. Cruz and Mr. Orozco had regular contact at El Reno. Mr. Cruz testified that Mr. Orozco asked him to bring two Christmas gifts from Mr. Orozco's children, referring to the gifts as "niñas." The niñas were to be delivered to Mr. Cruz by Ms. Martinez. Mr. Orozco provided Mr. Cruz with the address and telephone number of a Days Inn in Oklahoma City, an airline flight number on which Ms. Martinez would arrive, and the name Francisco Franco.[1] This information was written on a white slip of paper later found in Mr. Cruz' possession. Also in his possession was a yellow slip of paper with the name Fabiola Orozco, Mr. Orozco's mother, and the figure $500.

Ms. Martinez flew from her home in Texas to Oklahoma City on the specified flight. Mr. Cruz met Ms. Martinez at the Days Inn on December 16 before Mr. Contreras made the delivery. Ms. Martinez and Mr. Cruz drove in Mr. Cruz' truck to a restaurant and then to a convenience store to make a telephone call. The telephones at the Days Inn were not operating that night. Ms. Martinez called Mr. Contreras, informing him her contact had arrived and she was ready for the delivery. Mr. Contreras asked to talk to Mr. Cruz, but Ms. Martinez stated Mr. Cruz refused to come to the telephone. Ms. Martinez and Mr. Cruz returned to the Days Inn,

then Mr. Cruz departed. Later than night, Mr. Contreras delivered the money and putative drugs to Ms. Martinez. The putative drugs consisted of two heat sealed packets, packaged to resemble heroin, but actually containing talcum powder. Pursuant to Mr. Orozco's instructions, Ms. Martinez wrapped the packets as Christmas presents with decorative paper and tape. In his phone calls from prison, Mr. Orozco told Ms. Martinez to wrap the packages tightly so the carrier (Mr. Cruz) would not be tempted to open and use them himself, which Mr. Orozco referred to as "eating the caramel." He also instructed Ms. Martinez to tell Mr. Cruz not to open the niñas, "And say that's an order from the top man in San Diego."

The next day, Mr. Cruz told Mr. Orozco he had met Ms. Martinez but she did not have the niñas. Mr. Orozco told him to go back again that night. Mr. Cruz later returned to the Days Inn as instructed. Ms. Martinez gave him a paper sack containing two bottles of Vicks Vaporub and some chewing gum. In Mr. Cruz' presence, she took an envelope out of her purse. It was open and he could see it contained the two niñas. Ms. Martinez dropped the envelope in the sack. Mr. Cruz and Ms. Martinez did not discuss the contents of the niñas. However, Ms. Martinez stated Mr. Cruz would have understood what the niñas contained from the context of their conversation. Immediately upon leaving the motel with the paper sack, Mr. Cruz was arrested. The sack and its contents were seized.

The evidence at sentencing included the testimony of Mr. Cruz and Mr. Orozco, along with that of Agent Nichols and two El Reno employees. The testimony included descriptions of "302's"—reports of the FBI interviews with Mr. Cruz and Ms. Martinez—and recitations of transcribed, recorded telephone conversations between Mr. Orozco and Ms. Martinez.

There was conflicting testimony about what Mr. Cruz believed the contents of the niñas to be. Mr. Orozco testified he offered Mr. Cruz $1,000 to pick up the niñas, and he

---

1. It is not clear from the record to whom this refers. The government stated at oral argument and in its brief this was the name of the undercover agent. However, in the record the agent is referred to as Jose Contreras. We can only infer the two names are aliases.

told Mr. Cruz the niñas contained heroin. Mr. Cruz denied being offered $1,000 and said he did not know what was in the niñas. Richard Sanchez, a fellow correctional counselor at El Reno, testified Mr. Orozco stated Mr. Cruz did not know the contents of the niñas. When confronted with his interview statement to Agent Nichols that Mr. Orozco had offered him $1,000, Mr. Cruz replied Agent Nichols must have misunderstood him. He testified Mr. Orozco had once jokingly offered him $1,000 to use the telephone at the prison. Mr. Cruz stated Mr. Orozco told him he did not need to know what was in the niñas.

By his own admission, Mr. Cruz had previously delivered contraband to Mr. Orozco. Mr. Cruz and Mr. Orozco gave conflicting testimony about the exact nature of this contraband, but it undisputedly included clothing; and Mr. Orozco testified it included watches as well. The items were sent to Mr. Cruz' post office box by Ms. Martinez. Mr. Cruz was able to deliver the items to Mr. Orozco with impunity because, as a correctional counselor, he was not subject to search upon entering the prison. In return, Mr. Orozco gave Mr. Cruz some of the items.

As a counselor, Mr. Cruz was well acquainted with Mr. Orozco and knew he was imprisoned on a serious drug charge. Mr. Cruz had been trained not to get too close to inmates and not to do favors for them including bringing anything into the prison. This was referred to at hearing as the "prime directive" of correctional counselor training. Mr. Cruz stated he had become friendly with Mr. Orozco, he was drawn in by Mr. Orozco, and agreed he should have known better than to comply with Mr. Orozco's request.

■ Mr. Cruz was initially indicted on three counts of federal drug charges. Pursu-

ant to a written plea agreement, the indictment was dismissed, and Mr. Cruz pled guilty to a superseding information consisting of one count of conspiracy to provide contraband to an inmate in violation of 18 U.S.C. § 1791. Under the terms of the plea agreement, the sentencing court was to hold an evidentiary hearing to determine Mr. Cruz' sentence. That sentence turned upon what Mr. Cruz believed the contents of the niñas to be.[2]

Following the hearing, the district court determined Mr. Cruz believed the niñas contained heroin. The court sentenced him to 60 months' imprisonment. This appeal followed.

■ We review the application of the sentencing guidelines de novo. *United States v. Alessandroni,* 982 F.2d 419 (10th Cir.1992). However, evidentiary determinations of the district court at a sentencing hearing are reviewed for clear error. *United States v. Rutter,* 897 F.2d 1558, 1562–63 (10th Cir.1990). Here, Mr. Cruz challenges the district court's factual finding he believed the niñas contained heroin. Therefore, we review the issue on appeal for clear error. When reviewing a challenge to the sufficiency of evidence underlying the district court's sentence, we view the evidence and inferences drawn therefrom in the light most favorable to the district court's determination.[3]

The issue in this appeal rests upon the interplay between the federal criminal code and the sentencing guidelines. Although the issue is straightforward, the underlying statutory scheme is complex. Mr. Cruz pled guilty to a violation of 18 U.S.C. § 371, which provides:

---

2. The parties implicitly agree the determination of the "prohibited object" in this context turns upon the object Mr. Cruz believed he was providing, not the object actually provided. This comports with the *actus reus* of the conspiracy crime, which is the agreement, and not the actual commission of the crime. *See United States v. Roberts,* 14 F.3d 502, 510 (10th Cir.1993) (legal impossibility not a defense to conspiracy).

3. This Circuit has not articulated this tenet of evidentiary construction on review within the

sentencing context. However, it is used in other contexts when the district court's findings are reviewed for clear error. *See, e.g., United States v. Uribe–Galindo,* 990 F.2d 522, 523 (10th Cir. 1993) (motion to suppress); *Wyoming Wildlife Federation v. United States,* 792 F.2d 981, 984 (10th Cir.1986) (determining prevailing party under the Equal Access to Justice Act). It is also used to review the sufficiency of evidence for guilty verdicts. *See, e.g., United States v. Johnson,* 42 F.3d 1312, 1319 (10th Cir.1994).

If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Mr. Cruz was charged with conspiring with Ms. Martinez and Mr. Orozco to violate 18 U.S.C. § 1791(a)(1), which states:

Whoever ... in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so ... shall be punished as provided in subsection (b) of this section.

The statute, 18 U.S.C. § 1791, and the related sentencing guideline, U.S.S.G. § 2P1.2, have a parallel structure dividing the possible violations into subsections, depending on the type of "prohibited object" involved. In addition, 18 U.S.C. § 1791(d) defines various prohibited objects, including controlled substances, firearms, currency, and "other" objects. 18 U.S.C. § 1791(b) sets forth the maximum sentence for each type of prohibited object, which ranges from 20 years for narcotic drugs to 6 months for "other" objects. Sentencing Guideline § 2P1.2 sets forth the base offense level for each, which ranges from level 23 for a firearm to level 4 for "other" objects. Each type of prohibited object therefore corresponds to a substantive subsection of § 1791(d), a penalty subsection of § 1791(b), and a sentencing guideline subsection of § 2P1.2. Therefore, the particular subsection of § 1791(d) to which Mr. Cruz was pleading guilty depended on the outcome of the hearing.

Although U.S.S.G. § 2P1.2 specifies different offense levels for different prohibited objects, there is a cross-reference in the guideline that can take precedence over that differentiation.

Guideline § 2P1.2 states:

(c) Cross Reference

(1) If the defendant is convicted under 18 U.S.C. § 1791(a)(1) and is punishable under 18 U.S.C. § 1791(b)(1), the offense level is 2 plus the offense level from § 2D1.1, but in no event less than level 26.

It is undisputed that Mr. Cruz pled guilty to a count of providing a prohibited object under § 1791(a)(1). However, the cross-reference applies only if the defendant is punishable under § 1791(b)(1). Subsection (b)(1) corresponds to the prohibited objects enumerated in 18 U.S.C. § 1791(d)(1)(C). These include narcotic drugs, one of which is heroin. 21 U.S.C. § 802(17).

The cross-reference in § 2P1.2 directs the court to add 2 levels to the base offense level in § 2D1.1. The cross-reference also specifies a minimum level of 26. In this case, the minimum applies. Section 2D1.1 is the guideline section used to sentence drug crimes. It, in turn, refers to a detailed table listing quantities and types of drugs with their corresponding offense levels. The table specifies an offense level of 20 for 2 ounces, or 56.70 grams, of heroin. Therefore, the minimum offense level of 26 takes precedence over the cross-reference.

Guideline § 2P1.2 also provides:

(b) Specific Offense Characteristic

(1) If the defendant was a law enforcement or correctional officer or employee, or an employee of the Department of Justice, at the time of the offense, increase by 2 levels.

■ The increase of 2 levels under § 2P1.2(b) for being a correctional officer does not turn upon the type of prohibited object involved. The district court correctly applied this increase.

■ Thus, the correct offense level, based on the conclusion Mr. Cruz believed the niñas contained heroin, was 28. The sentence range for level 28 (with Mr. Cruz' criminal history category of 1) is 78 to 97 months. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. However, the statutory maximum for conspiracy under 18 U.S.C. § 371 is 5 years. This maximum limits the sentence to 5 years, notwithstanding the statutory maximum of 20 years for heroin under 18 U.S.C. § 1791(b). Because both the minimum (78 months) and the maximum (97 months) for the applicable offense level of 28 are above the statutory maximum for the crime, the court applied the statutory maximum and not the sentencing guideline range. Based on its

determination Mr. Cruz believed the niñas contained heroin, the court correctly applied the statutes and guidelines and sentenced Mr. Cruz to 60 months.

Because of the interplay between statutory maximum sentences and the sentencing guidelines, a spectrum of sentences could have resulted from the sentencing hearing. Of course, it is neither practical nor necessary for us to enumerate all the possibilities. However, we note that if the prohibited object in question is not heroin, the cross-reference in the sentencing guideline may not apply.

■ The remaining question, and the subject of this appeal, is whether the court had adequate evidence before it to support its conclusion Mr. Cruz believed the niñas contained heroin. The prosecution bears the burden to prove facts underlying sentencing by a preponderance of the evidence. *Rutter*, 897 F.2d at 1560.

The district court found Mr. Cruz believed the niñas contained heroin based on three independent rationales. The court found that if Mr. Orozco's testimony were true, there was a preponderance of evidence proving Mr. Cruz believed the niñas to contain heroin. If Mr. Orozco's testimony were not true, there was enough circumstantial evidence of the same fact. Finally, if Mr. Cruz did not know the contents of the niñas, his deliberate ignorance gave him constructive knowledge of their contents.

■ Mr. Cruz conceded at oral argument that if Mr. Orozco credibly testified he told Mr. Cruz the niñas contained heroin, our inquiry is at an end. However, he argued the district court failed to make an explicit finding of credibility. The government responded that we may infer such a finding of credibility because Rule 52 directs us to give deference to the district court's opportunity to judge witness credibility, and Mr. Orozco's credibility is an inference favorable to the district court's findings. Even so, the issue must turn on the district court's expressed findings. At sentencing, the district court stated Mr. Orozco's testimony was inconsistent with that of other witnesses, and the court disbelieved "Mr. Orozco's version of the events." Although this is not an explicit finding that Mr. Orozco lacked credibility, it is equivocal, thus depriving us of the ability to infer the court found Mr. Orozco credible. Moreover, because the district court believed there was sufficient circumstantial evidence that Mr. Cruz knew what was in the packages, it specifically declined to make a determination as to Mr. Orozco's credibility in asserting he told Mr. Cruz about the heroin.

In the alternative, the district court concluded there was enough circumstantial evidence of Mr. Cruz' belief to support the district court's finding. We observe at the outset there is little question Mr. Cruz believed he was providing more than gum and mentholated chest rub. The government points out no one would pay $1,000 for such items. Indeed, Agent Nichols testified those items would be worth no more than $30 inside the prison. In addition, the government points out there would be no need for Mr. Cruz to make two stops at a motel to pick up Christmas presents from Mr. Orozco's children. Mr. Cruz claims his first trip was only to take Ms. Martinez out to eat. However, Mr. Cruz does not explain why he believed Ms. Martinez would not have the niñas, which she presumably brought with her from the children in Texas. Ms. Martinez stated Mr. Cruz heard her part of the telephone conversation with Mr. Contreras and, therefore, would have inferred the niñas contained drugs. Mr. Cruz denied hearing the conversation. Finally, the record states the niñas felt like bags of powder underneath their wrapping, but there is no evidence Mr. Cruz ever handled them.

The government further points out there would be no need to wrap the niñas carefully if the carrier did not know what was in them. Mr. Cruz counters the wrapping was designed to keep him ignorant of the contents. Both these inferences are plausible, but Mr. Cruz may have been tempted to open the niñas even if he did not know their contents. The government further points out Mr. Cruz had received contraband for Mr. Orozco before and knew Mr. Orozco was in prison for drug crimes, and that Mr. Cruz was experiencing financial difficulties as a result of his recent divorce. Mr. Cruz responds his prior

receipt of contraband implies he did not know the niñas contained drugs. When he received items for Mr. Orozco before, he carefully checked to ascertain they did not contain drugs.

Finally, the government makes much of the slip of paper with Mr. Orozco's mother's name and the figure $500. The district court concluded this information "dovetails too conveniently" with the difference between the $1,000 promised to Mr. Cruz and the $1,500 given Ms. Martinez. However, Mr. Orozco's testimony regarding the planned disposition of the cash was far from consistent. He testified he offered Mr. Cruz $1,000 to deliver the niñas. He implied the remaining $500 was to be sent to or laundered through his mother, but Mr. Cruz' role in this undertaking is unspecified. Mr. Orozco also testified that Ms. Martinez, not Mr. Cruz, would send the money to Mr. Orozco's mother. At another point, Mr. Orozco testified the informant who placed the "order" for the heroin and cash would pay Mr. Cruz the $1,000. Mr. Orozco also testified the cash was to be delivered to the informant, rather than to Mr. Cruz or Mr. Orozco. If so, it is unclear who would provide the $1,000 to Mr. Cruz. Moreover, none of the cash was actually given to Mr. Cruz, although Mr. Orozco testified Mr. Cruz was not to receive the cash until both niñas were separately delivered. Given all this possibly contradictory testimony from Mr. Orozco, along with the ambiguous statement of the district court, it is impossible to draw any clear inference on review from the notations on the slip of paper.

In light of the evidence of record, we can draw only two inferences supporting the district court's finding. First, the court explicitly found Mr. Cruz was to receive $1,000 for his actions, based on the statements he made in his FBI interview and Mr. Cruz' lack of credibility in denying the contents of the 302. This was not a clearly erroneous finding. The evidence supports the inference Mr. Cruz knew the niñas contained something valuable.

Second, Mr. Cruz refused to speak to Mr. Contreras. He made two stops to a motel to await the delivery of two purportedly innocuous Christmas gifts. Mr. Cruz had been trained that inmates may ask him to introduce controlled substances into prison. Mr. Orozco was serving a sentence for drug crimes. These facts support the inference Mr. Cruz knew the niñas contained a controlled substance.

Without Mr. Orozco's testimony, these inferences taken together, only allowed the district court to conclude, at most, Mr. Cruz knew the niñas contained a valuable controlled substance. However, they do not allow the court to properly conclude Mr. Cruz knew the niñas contained heroin. Indeed, the only evidence of which specific substance Mr. Cruz believed was in the niñas was the $1,000 he was offered to deliver them. However, the record contains no evidence of which controlled substances might fetch such a price.

If Mr. Cruz merely believed the niñas contained a controlled substance, there could be a range of possible sentences, depending on the exact type of substance involved. As a result, the maximum sentence could be drastically reduced. For instance, if the prohibited object were a controlled substance defined under 18 U.S.C. § 1791(d)(1)(D), it would be punishable by a maximum sentence of 1 year under § 1791(b)(4). Applying sentencing guideline § 2P1.2(a)(3) yields a base offense level of 6, with an increase of 2 levels under § 2P1.2(b), for a total offense level of 8. For a criminal history category of 1, this results in a sentence of 0 to 6 months. We further note this is the identical sentence range that would be due if Mr. Cruz merely intended to introduce gum into the prison.[4]

The court's third alternative rationale was deliberate ignorance. We need not linger long on this point because it does not avoid the insufficiency problem in the second rationale. The court accurately cites *United*

---

4. This is predicated upon a prohibited object defined under 18 U.S.C. § 1791(d)(1)(F) ("other"), punishable by a maximum sentence of 6 months under § 1791(b)(5). Applying sentencing guideline § 2P1.2(a)(4) yields a base offense level of 4, with an increase of 2 levels under § 2P1.2(b), for a total offense level of 6. For a criminal history category of 1, this results in the identical sentence of 0 to 6 months.

*States v. de Francisco–Lopez,* 939 F.2d 1405, 1409 (10th Cir.1991) (citations omitted), which describes deliberate ignorance as when "defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." We need not reach the question, on which the parties focus, of whether or how Mr. Cruz should have taken steps to discover the contents of the niñas. In light of its unwillingness to rely on Mr. Orozco's testimony, the district court lacked sufficient evidence to conclude there was a "high probability" Mr. Cruz was aware the niñas contained the specific substance heroin.

The government finally argues Ms. Martinez' belief the niñas contained heroin should be imputed to Mr. Cruz because the two were co-conspirators. The government cited no authority for this proposition, which it raised at oral argument. This proposition was not the basis for the district court's finding of fact. We therefore need not reach its merits.

We conclude the findings made by the district court are insufficient to support the court's sentence of 60 months; therefore, that sentence is **REVERSED.** We **RE-MAND** this case to the district court for reexamination of the sentencing evidence in a manner it determines appropriate, or, in the exercise of its discretion, resentencing if the court concludes it can make no additional findings to resolve the problems described in this opinion.